44437.   BURNS v. THE STATE.

SUBMITTED MAY 6, 1969—DECIDED MAY 15, 1969.

*C. B. King*, for appellant.

*Robert W. Reynolds, District Attorney*, for appellee.

EBERHARDT, Judge. ■ The challenge to the array of both the grand and the traverse juries was based upon an alleged systematic exclusion of Negroes from the jury box. See *Allen v. State*, 110 Ga. App. 56 (137 SE2d 711). There was voluminous evidence both in support of and in opposition to the challenge.

The jury commissioners of Dougherty County testified that they had worked almost every afternoon from about the first of August until just before Christmas in 1967 in the preparation of a completely new jury list from which the names were selected and placed in the boxes; that this was done pursuant to *Code Ann.* § 59-106, using the registered voters' list from the last general election in selecting names of people who constituted a representative cross-section of the people of the community and whom they deemed to have sufficient intelligence to take the evidence introduced in a trial and make a decision. They testified that this was done without regard to race, color, creed or national origin. The standard was applied to all alike—white or black—indiscriminately. They admitted that due to lack of education more Negroes than whites would be lacking in the capacity to understand evidence and make decisions from a consideration of it, but asserted that they actively sought to get names of qualified Negroes for placing on the list, and that

680

the list as completed carried the names of substantially more Negroes than had ever before appeared on it. It was thought to be foolhardy and unwise to put on the list names of people who could not understand evidence or arrive at an intelligent decision upon a consideration of it. Taking the voters' list the six commissioners discussed those who were known to them, assigned among themselves the names of others so that investigations could be made concerning them and report back their findings to a full meeting. Every name on the voters' list was discussed, where unknown was investigated, and considered in the making up of the list. The voters' list was made alphabetically, with no indication of race or color as to anybody. The city directory and the telephone book were aids used in finding out about some of those on the list. People were talked to who lived in the neighborhoods and who were acquainted with the prospective jurors (from the voters' list) and information was gathered from the neighbors as to whether the prospect would likely be a good juror. The name of no man or woman was left off the list because of his race or color, nor was any placed on it for that reason alone. Since compiling the latest list Negroes have been actively serving on juries in this county. The district attorney testified that he had canvassed the voters' list and found the names of 299 Negroes on it.

Defendant's witness had canvassed the jury list of some 2,134 names and found that of these only about 102 were Negro, 2,016 were white and 17 were unknown, while of the county population of 40,416 there were 12,567 Negroes. Defendant contends that from these statistics alone it must be concluded that the jury list does not reflect a representative cross-section of the community, and that on the face of it there has been an invidious discrimination in the selection of the names to go on the list.

There is no evidence as to the comparative numbers of white and Negro electors appearing on the voters' list; consequently, we cannot conclude that the disparity in the numbers appearing on the jury list is disproportionate to that on the list from which the law requires that the names be selected, as was the case in Whitus v. Georgia, 385 U. S. 545 (87 SC 643, 17 LE2d 599), where the list was selected from the tax digests maintained on a

segregated basis and the disproportionate figures appeared from the evidence.

It is true that a systematic token summoning of Negroes may amount to a systematic exclusion, and thus not comply with constitutional standards (Brown v. Allen, 344 U. S. 443 (73 SC 397, 97 LE 469)), and a great disparity between the number of Negroes appearing on the jury list and the list from which the law requires it to be made up raises a prima facie case against selection by use of constitutional standards which is not overcome by the presumption that officials properly perform their duties (Jones v. Georgia, 389 U. S. 24 (88 SC 4, 19 LE2d 25)), particularly as to federal juries (Rabinowitz v. U. S., 366 F2d 34). But we do not find the evidence sufficient to carry the burden of the challenge under the ruling made in Swain v. Alabama, 380 U. S. 202 (85 SC 824, 13 LE2d 759). The system employed under the laws of this State may be imperfect in that it fails to achieve the ideal of a *perfectly* representative cross-section of the citizens for service on juries,[1] but imperfection is not *per se* discrimination, for there is little perfection in most of what we do in any facet of life. Cf. Billingsley v. Clayton, 359 F2d 13. Numbers and percentages have their weight in a determination of whether there has been a bona fide effort to achieve constitutional requirements, but the selection of a jury list is not exclusively a numbers game. There are other considerations which we deem to be equally or more important. We agree with the commissioners that it is foolhardy and unwise to select people for jury service whose intelligence level is such that they cannot understand the evidence in an ordinary law suit and on the basis of it, applying the law as given in charge by the court, make a fair verdict.

■ The challenge to the search warrant made by the motion to suppress, properly and timely made, brings into question the

---

[1]Its constitutionality was declared in *Robinson v. State,* 225 Ga. 167 (1) (167 SE2d 158), where the Supreme Court asserted that "it clearly leads to the inclusion of all elements of the community, including Negroes and women, and cannot be said to exclude either."

sufficiency of the evidence presented to the magistrate as a showing of probable cause for issuance of the warrant.

The only evidence before the magistrate was an affidavit of policeman Clinton Luther that "on the premises at 909 Corn Ave., Albany, Ga., a residence, and a light blue Falcon 68 Ga. 25D 1238, there is now being concealed certain property, namely, quantity of marijuana, barbiturate amphetamine and other dangerous drugs. Also, radios, T-V's, clothing and other property shoplifted from Gibsons, Millers and Sears, Roebuck, which are contraband and fruits of the crime, and that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: Detective Clinton Luther, City Police, Information received from an informer that Calvin Burns is selling dangerous drugs to students and other persons and that Calvin Burns is receiving items that have been shoplifted as payment for these dangerous drugs."

"[B]ased on the above and foregoing facts and information he has probable cause to believe that the aforesaid property is concealed upon the aforesaid premises, person and automobile and is subject to seizure and makes this affidavit so that a search warrant may issue. . ."

There was evidence indicating that the police were in the office of the magistrate for only a short time—estimated to have been fifteen minutes, or not over thirty minutes—and that he was busy answering his telephone frequently during that period. The defendant urges that these circumstances indicate that the magistrate wholly failed to consider in a judicial manner the matter of whether probable cause was shown and that he issued the warrant as a routine procedure.

Pretermitting the matter of whether a judicial determination of probable cause appears to have been made, we go immediately to the matter of whether this showing was sufficient to authorize a finding of probable cause.

It is apparent that the whole of the officer's information was derived from hearsay, for he recites no fact that came within his own knowledge. All of it is recited as coming from a "reliable informer." That alone would not prevent the issuance of a search warrant, for insufficiency of the affidavit does not ap-

pear from the fact alone that *some or all* of the facts recited come from information furnished by others (*Strauss v. Stynchcombe,* 224 Ga. 859 (2) (165 SE2d 302)), if there is substantial basis for crediting the hearsay. Jones v. U. S., 362 U. S. 257, 272 (80 SC 725, 4 LE2d 697, 78 ALR2d 233); United States v. Ventresca, 380 U. S. 102 (85 SC 741, 13 LE2d 684). However, where the officer relies upon an informant he must give sufficient information of the underlying circumstances from which he concluded that the informant was reliable. *Marshall v. State,* 113 Ga. App. 143 (1) (147 SE2d 666); *Landers v. State,* 114 Ga. App. 687 (152 SE2d 431); *Wood v. State,* 118 Ga. App. 477 (164 SE2d 233). In his affidavit should appear a recital of what the informant actually said, and why the officer thought that the information was credible (*Peters v. State,* 114 Ga. App. 595 (152 SE2d 647)), especially when the name of .the informant is not stated.

While it is not required as a showing of probable cause for the issuance of a search warrant that the informant's name be stated, there must be a recital of specifics as to what the informant based his information upon. For example, it might have been stated whether the informant had seen Burns make sales of marijuana, etc., and if so, to whom the sales were made, where and when, and what items of merchandise were taken by him at the time in payment. Or it might have been recited, if true, that the informant had seen people going in the defendant's house carrying items of merchandise and coming out without them, but under the influence of or in possession of drugs. Beck v. Ohio, 379 U. S. 89 (85 SC 223, 13 LE2d 142); Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723); Rugendorf v. U. S., 376 U. S. 528 (84 SC 825, 11 LE2d 887); Spinelli v. U. S., 393 U. S. 410 (89 SC 584, 21 LE2d 637). And see Draper v. U. S., 358 U. S. 307 (79 SC 329, 3 LE2d 327). It is not enough simply to recite that from information received from a reliable informant the affiant has come to suspect or to believe that a named person is in possession of contraband items. Nathanson v. U. S., 290 U. S. 41 (54 SC 11, 78 LE 159). There is no recital of past experience with the informant from which the officer might conclude that his informant was reliable, as appeared in

*Marshall v. State,* 113 Ga. App. 143, supra, and in McCray v. Illinois, 386 U. S. 300 (87 SC 1056, 18 LE2d 62). The affidavit tendered by policeman Luther was insufficient, under these rulings, to authorize the magistrate to make a finding of probable cause. It did not meet Fourth Amendment standards, made applicable to the States under the ruling in Mapp v. Ohio, 367 U. S. 643 (81 SC 1684, 6 LE2d 1081).

Nor can the deficiency be supplied by facts discovered in making the search, for the sufficiency of the affidavit must be determined as of the time the warrant issued (*Wood v. State,* 118 Ga. App. 477, 478, supra), and this court can consider only the information brought to the magistrate's attention. Giordenello v. U. S., 357 U. S. 480 (78 SC 1245, 2 LE2d 1503).

The warrant was illegally issued and the search under it was unlawful. Consequently, it was error to deny defendant's motion to suppress the evidence which was the fruit of the search.

■ Other enumerations of error require a consideration of the evidence, and of the objections made at the time it was tendered. There is no transcript of the evidence in the record; consequently these enumerations raise no questions for our consideration.

*Judgment reversed. Bell, P. J., and Deen, J., concur.*