46215. ANSLEY v. THE STATE.
46216. PETREE v. THE STATE.

ARGUED MAY 6, 1971—DECIDED SEPTEMBER 27, 1971—
REHEARING DENIED OCTOBER 22, 1971—

Cook & Palmour, Bobby Lee Cook, Shulman, Alembik & Rosenbluth, Arnold Shulman, for appellants.

Lewis R. Slaton, District Attorney, Carter Goode, J. Melvin England, Joel M. Feldman, for appellee.

JORDAN, Presiding Judge. ■ On the ex parte verified petition of the District Attorney of the Atlanta Judicial Circuit and a supporting affidavit of one of his assistants, a judge of the Atlanta Judicial Circuit issued an investigative warrant and order dated March 13, 1970, to permit surveillance, including the use of recording devices, within specified areas of Fulton County for a period terminating at midnight, March 21, 1970, to obtain evidence relating to the offense of improperly influencing legislative action under Code Ann. § 26-2304 (b). The defendants contend that the trial judge erred in failing to sustain a motion to suppress because

the offense described under *Code Ann.* § 26-2304 (b) is not "bribery" as the word is used in 18 USCA 2516 (2) or *Code Ann.* § 26-3004.

The cited federal statute, enacted as a part of Title III of the Omnibus Crime Control and Safe Streets Act of 1968; P. L. 90-351; 82 Stat. 197, 217; 18 USC 2516 (2), provides that on application by a principal prosecuting attorney "to a State court judge of competent jurisdiction" the judge, in conformity with other provisions of the law and the applicable State statute, may authorize or approve "the interception of wire or oral communications by investigative or law enforcement officers" when the interception "may provide or has provided evidence . . . of the offense of . . . bribery . . . or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception."

While the trial judge cited the applicable State law as "Section 26-2005, Georgia Code Annotated" the applicable law is *Code Ann.* § 26-3004 (c), which is substantially indentical to the statute which it superseded. Both refer to "any crime under the laws of this State, or the United States involving . . . bribery." See and compare Ga. L. 1967, pp. 844, 847; 1968, pp. 1249, 1328.

In statutory enactments "ordinary signification shall be applied to all words, except words of art, or words connected with a particular trade or subject-matter, when they shall have the signification attached to them by experts in such trade, or with reference to such subject-matter." *Code* § 102-102 (1). In ordinary signification "bribery" may mean an "act of influencing the action of another by corrupt inducement." Merriam-Webster's New International Dictionary (2d Ed.), Unabridged. A standard meaning as a legal word of art is somewhat broader to include "offering, giving, receiving, or soliciting of anything of value to influence action as [an] official or in discharge of [a] legal or public duty." Black's Law Dictionary (4th Ed.).

The only offense expressly designated as bribery under Georgia law is *Code Ann.* § 26-2301, covering one who "solicits" something for "the purpose of influencing" official action. In this sense it is obvious that the offense under § 26-2304 (b) covering one who "asks for" something "in return for an agreement to procure or

attempt to procure" legislative action is also a species of bribery, regardless of the label used by the General Assembly.

Accordingly, we conclude that *Code Ann.* § 26-2304 (b) is an offense coming within the provisions of 18 USC 2516 (2) and *Code Ann.* § 26-3004 (c).

■ In urging that electronic recordings obtained pursuant to the investigative warrant were erroneously admitted in evidence the defendants emphasize the fact that the recordings were not delivered immediately to the issuing judge. The warrant and order dated March 13, 1970, provided for "return hereof and report as required by law before me within thirty days of the date hereof."

The applicable State statute requires a return and report within a maximum of 30 days of the issuance of the warrant. *Code Ann.* § 26-3004 (i). It appears that return was made on or about April 7, 1970, and within 30 days from the date of the order. The applicable federal provision requires that the recordings are to be made available to the judge issuing the order immediately upon the expiration of the period of the order and are to be sealed under his direction. 18 USC 2518 (8) (a). Evidence obtained in violation of any of the provisions of the State law is inadmissible, except to prove an unlawful surveillance or invasion of privacy. *Code Ann.* § 26-3007. But the penalty for a violation of the above stated requirements of the federal statute is limited to the contempt powers of the issuing judge. 18 USC 2518 (8) (c). Such a violation is not included in the allowable grounds of a motion to suppress. 18 USC 2518 (10).

The evidence was not inadmissible for any reason here argued.

■ In attacking the validity of the order authorizing the surveillance the defendants rely on *Cross v. State,* 225 Ga. 760 (171 SE2d 507); *Burns v. State,* 119 Ga. App. 678 (168 SE2d 786); and *Fowler v. State,* 121 Ga. App. 22 (172 SE2d 447). We have carefully examined these cases in the light of the order in this case and conclude that these cases afford no basis for a determination that the surveillance was improperly conducted by reason of any alleged deficiencies in the order or warrant and the supporting affidavit. A reading of the *Cross* case shows that it deals only with Chapter 119 of 18 USCA relating to the requirement for obtaining an order authorizing wire tapping and 18 USC 2518 (4) (e) and (5)

as to the requirements for the contents of such order. The facts in this case show clearly that an order was obtained as required and that the contents of such order met the requirements of both federal and state statutes, thus taking this case out of the holding in *Cross*.

■ The defendants contend that telephone messages intercepted preceding the surveillance order violated State and federal law, arguing that at the time there was no commission of a crime and that the messages were not in furtherance of a crime. It is undisputed that these recordings were made through devices placed in the office of one of the persons named in the indictment as a person from whom money had been and was being solicited, who expressly consented to the surveillance, and the evidence amply supports a conclusion that the messages were in furtherance of the commission of a crime.

Under Georgia law a permissible exception is recognized "in those instances wherein the message shall be initiated or instigated by a person and the message shall constitute the commission of a crime or is directly in the furtherance of a crime, provided at least one party thereto shall consent." *Code Ann.* § 26-3006. The federal law includes similar exceptions. 18 USC 2511 (2) (c, d).

It is also contended that the evidence discloses that these recordings were "so inaudible and indistinct in many portions that would require, therefore, the jury to merely speculate as to what was said."

The above contentions are without merit.

■ It is further asserted that the constitutional rights of the defendants were "violated when they were, by electronic surveillance, exposed to interrogation by law enforcement officers without being advised at that time that they would have the right to counsel, and unless counsel was present at the time of interrogation." The argument is advanced on the theory that during the period of surveillance immediately before apprehension, with an arrest warrant already issued for one of the individuals, the individuals were already in a defendant stage of the proceedings. In our opinion the record and transcript makes it clear that at this stage they were merely *suspects not in custody*.

The law enforcement officials were acting at the time pursuant to the surveillance order, and unless the laws authorizing the order supporting their actions are unconstitutional, and no such issues are before this court, there was no violation of any constitutional rights as here insisted upon.

The present case is not within the rulings of any of the landmark Supreme Court cases which the defendants cited, i.e., Nardone v. United States, 302 U. S. 379 (58 SC 275, 82 LE 314); Gideon v. Wainwright, 372 U. S. 335 (83 SC 792, 9 LE2d 799, 93 ALR2d 733); Massiah v. United States, 377 U. S. 201 (84 SC 1199, 12 LE2d 246); and Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974).

Obviously none of these cases involves *suspects not in custody,* or discloses any ruling which we consider applicable to *suspects not in custody* as disclosed in the present case.

■ The trial judge overruled motions, at the close of the State's evidence, and at the close of all of the evidence, to require the State to elect which of the two counts it would proceed upon. In our opinion the rulings as made involved the exercise of a sound discretion by the trial judge, and nothing appears to disclose any abuse of this discretion. See *Pippin v. State,* 205 Ga. 316 (5) (53 SE2d 482); *Sutton v. State,* 124 Ga. 815 (53 SE 381); *Lascelles v. State,* 90 Ga. 347 (16 SE 945, 35 ASR 216); *Stewart v. State,* 58 Ga. 577; *Hoskins v. State,* 11 Ga. 92; *Webb v. State,* 47 Ga. App. 505 (170 SE 827).

■ Finally, we reach the contention that the verdicts of not guilty of Count 1 and guilty of Count 2 are repugnant and inconsistent. Obviously the indictment purports to allege aspects of the same conduct to state two offenses based on the same transaction, the first under *Code Ann.* § 26-2301 (2) and the second under *Code Ann.* § 26-2304 (b).

The meaning of the offense set forth in *Code Ann.* § 26-2301 (2) is dependent upon the language of *Code Ann.* § 26-2301 (1) with respect to the purpose for which the person "solicits or receives" and is thus restricted to "influencing *him* in the performance of any act related to the functions of *his* office or employment" (emphasis supplied) whereas the purpose under § 26-2304 (b) is "an agreement to procure or attempt to procure the passage or defeat

the passage of any legislation" which includes solicitation for the sale of influence by the perpetrating officer or employee, who might or might not be a member of the legislative body, on others, members of the legislative body, to assure the passage or defeat of legislation. Thus to the extent that it is alleged under Count 1 that Petree, with Ansley as his abettor, solicited the sale of his own vote as a member of the legislative body, the alleged transaction is an offense under *Code Ann.* § 26-2301 (2), but should it appear that the solicitation was for an agreement, expressed or implied, to procure or attempt to procure the passage or defeat of legislation, it involves the attempted sale of his influence on other members of the legislative body, and comes under *Code Ann.* § 26-2304 (b). In brief, we see a distinction in accusing Petree, in conjunction with Ansley, of soliciting the sale of his own vote, and in accusing him, in conjunction with another, of soliciting the sale of his influence in procuring favorable legislative action, which might or might not include his own vote. Thus, from the standpoint of conviction and acquittal, an acquittal under Count 1 of the indictment as alleged is not, as a matter of law, inconsistent and repugnant to a simultaneous conviction under Count 2. Accordingly, the rule in *Kuck v. State,* 149 Ga. 191 (99 SE 622), and similar cases is inapplicable to the present case. See *Blair v. State,* 81 Ga. 629 (7 SE 855).

We recognize further that the trial judge, having refused to require the State to elect upon which count it would proceed, acted favorably to the defendants in requiring the jury in the event of a finding of guilt on one count, to acquit on the other. Even if two separate offenses were alleged, for reasons already stated, the action of the trial judge is consonant with the guidelines stated in *Code Ann.* § 26-506 (a) which protect an accused from a conviction "of more than one crime if (1) one crime is included in the other, or (2) the crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct."

*We find no error for any reason enumerated and each judgment is affirmed. Bell, C. J., Hall, P. J., Eberhardt, Deen, Quillian and Whitman, JJ., concur. Pannell, J., concurs in the judgment. Evans, J., dissents.*

EVANS, Judge, dissenting. Richard A. Petree, Sr., an Alderman of the City of Atlanta, and Benjamin Hugh Ansley, were tried under an indictment for bribery in two counts, in each of which Petree was charged as principal and it was charged that Ansley "did intentionally aid and abet" said principal. The jury returned a verdict of not guilty as to Count 1, and returned a verdict of guilty as to Count 2.

During the trial, defendants made timely motions to require the State to elect as to which count it would rely on, contending there could be no legal conviction on both counts, as each transaction was the same thing in each count, and that, in effect, the indictment was charging the same thing against defendants twice. The trial judge overruled the aforesaid motions, *but instead, charged the jury that defendants could not be convicted on both counts, and if convicted on either count, to acquit on the other.* The trial judge thus seems to have agreed with defendants in their contention and motion to require an election upon the ground that the same offense was charged in each count, albeit he overruled their motions.

The Supreme Court and Court of Appeals have repeatedly held that a verdict which creates a repugnancy or absurdity is not a good verdict. Illustrative are those cases where in one count defendant is charged with illegally possessing whiskey and in another count is charged with illegally selling whiskey. Where juries have acquitted the defendant of possessing the whiskey and have convicted him of selling whiskey, this is a repugnancy. It is obvious that if he did not possess it, he did not sell it. *Kuck v. State,* 149 Ga. 191 (1) (99 SE 622) (and see discussion at pp. 192-193); *Holder v. State,* 88 Ga. App. 859 (78 SE2d 261); *Smith v. State,* 38 Ga. App. 366 (143 SE 925); *Davis v. State,* 43 Ga. App. 122 (157 SE 888); *Britt v. State,* 36 Ga. App. 668 (137 SE 791); *Colley v. State,* 111 Ga. App. 756 (2) (143 SE2d 59); *Finch v. State,* 87 Ga. App. 426 (74 SE2d 121).

1. The first important question here is as to whether there was any difference between the charges in Count 1 and Count 2 of the indictment, for if not, the verdict does indeed create a repugnancy, as defendants contend.

Count 1 charged that the accused unlawfully solicited from

James F. Crist, Jr., The Beck Company, and The Southeast Property Consultants, Inc., $30,000 to influence Petree as such alderman, and ". . . to *use his influence and obtain his vote to secure passage* of a zoning petition then pending before the Board of Aldermen of the City of Atlanta to amend the 1954 zoning ordinance. . ."

Count 2 charged that the accused did unlawfully ask James F. Crist, Jr., The Beck Company, and The Southeast Property Consultants, Inc. for $30,000 ". . . for an agreement to *attempt to procure passage of legislation* before the Board of Aldermen of the City of Atlanta, the legislative body of said politicial subdivision, to wit: A zoning petition then pending before said Board of Aldermen to amend the 1954 Zoning Ordinance. . ."

The property involved was exactly the same in each count, being nine acres in Fulton County, Georgia, at the northwest corner of Interstate Highway 75 and Northside Drive; the change to be accomplished in the zoning ordinance was alleged to be the same in each count, to wit: to change said property from R-4 (residential) to O-I-D (office-institutional-conditional).

A careful study of the two counts reveals the difference between Count 1 and Count 2 is the difference between "tweedledee and tweedledum." In Count 1 it is alleged Petree was to "use his influence and obtain his vote"—while Count 2 alleges Petree would "attempt to procure the passage of legislation"—and in both counts exactly the same object was to be accomplished, for the same sum of money, from the same people.

Under the posture of the case, defendants were precluded from filing a plea of autrefois acquit, or former jeopardy, or res judicata, as both counts were tried and submitted to the jury at the same time. If these charges had been made in separate indictments, or if the trial judge had compelled an election, after one had been tried, defendants then would have had the right to file such plea of former jeopardy, etc. Nor were the defendants allowed the benefit of objecting to using the same evidence against them for the same transaction charged twice, as would have been their right if the charges had been made in separate indictments or if the trial judge had compelled an election.

Thus, instead of filing such pleas, the defendants could only

protect themselves against the double onslaught by filing their motions to require the State to elect as to which count it would proceed upon. It is a definite advantage to the State and a disadvantage to a defendant to have more than one count in an indictment, because jurors are human and prone to compromise, by deciding for the defendant on one count and against him on another count, whereas, as defendants contend, there actually was only one transaction and one charge against them, though it was divided into two counts so as to appear to the jury to be two charges.

Of course, it is elementary that where an issue has been litigated between parties, all matters involved therein are settled and not subject to fresh litigation between the same parties. *Walker v. State,* 12 Ga. App. 91 (76 SE 762); *Dickerson v. State,* 91 Ga. App. 453 (85 SE2d 782); *Cash v. State,* 108 Ga. App. 656 (2) (134 SE2d 524). In *Gray v. State,* 6 Ga. App. 428 (1) (65 SE 191), it is held: "Where several indictments for the same offense are pending against the same person, it is immaterial upon which he is first tried. Whenever he has been acquitted or convicted upon any one of them, *he can plead such acquittal or conviction in bar of a prosecution on any of the others. Irwin v. State,* 117 Ga. 706 (45 SE 48)." (Emphasis supplied).

To the same effect, see *Hurst v. State,* 11 Ga. App. 754 (2) (76 SE 78); and *Pope v. State,* 92 Ga. App. 661, 669 (89 SE2d 530).

Do both counts charge the same offense? There can be no question about it. The majority opinion clearly proceeds under a misapprehension of the language used in the two counts, and urges that Count 1 relates to Petree's *vote,* while Count 2 relates to use of his *influence.* We quote from the majority opinion: "Thus to the extent that it is alleged under Count 1 that Petree, with Ansley as his abettor, solicited the *sale of his own vote* as a member of the legislative body, the alleged transaction is an offense under *Code Ann.* § 26-2301 (2), but should it appear that the solicitation was for an agreement, expressed or implied, to procure or attempt to procure passage or defeat of legislation, it involves the attempted *sale of his influence* on other members of the legislative body, and comes under *Code Ann.* § 26-2304 (b). In brief, we see a distinction in accusing Petree, in conjunction with Ansley, of solic-

iting the *sale of his own vote,* and in accusing him, in conjunction with another, of soliciting the *sale of his influence* in procuring favorable legislation which might or might not include his own vote." And, although the majority opinion labors to show a difference between Counts 1 and 2, actually its statement only shows a difference between "vote" and "influence," *both of which are alleged in Count 1.* We repeat that Count 1 alleges in pertinent part: ". . . To use his *influence and obtain his vote . . .*" What difference is there between a city alderman soliciting money to "use his influence and obtain his vote" for passage of legislation, as used in Count 1, and in his binding himself to "an agreement to attempt to procure the passage of legislation" as used in Count 2? Could it possibly be said that Petree did not use "his influence" and "vote" to pass the legislation, as alleged in Count 1, but yet that he did "attempt to procure the passage of the legislation" as alleged in Count 2?

State's counsel approaches the question from a different angle than does the majority opinion, and urges in its brief: "There is nothing inconsistent in a finding by a jury that a defendant agreed for a consideration to procure the passage of legislation by a municipal legislative body of which he was a member and at the same time that he did not simply agree to vote for the measure and use his influence on others." This is logic in reverse. If Petree agreed for money to procure passage of legislation, and yet did not use his vote or influence to that end, surely those who were to pay the money would have had reason to *complain in the loudest tones.* Could he keep the bargain—illegal though it be—*by voting against the measure and using his influence against the measure* and yet contend that he did, at the same time, *attempt to procure the passage of the legislation?* To even suggest that Petree did not do what is alleged in Count 1, and at the same time he did do what is alleged in Count 2, is absurd on its face. Could he have said, "I did not use my influence for the passage of this measure, and I did not vote for it, but I did attempt to procure the passage of this legislation!" Pray tell, what could he do to attempt procurement of passage without using his vote and influence in behalf of passage? But this is what the verdict of the jury declares when it says "not guilty" on Count 1, and "guilty" on Count 2.

The verdict of "not guilty" under Count 1 definitely established that the defendants were not guilty of soliciting money from the named parties, to influence the actions of Petree, as a city alderman "to. use his influence and obtain his vote to secure passage of a zoning petition."

The same jury, in the same verdict, and in the same court, in a proceeding between the State and the same defendants as to the same transaction, returned a verdict of "guilty" under Count 2, which was diametrically opposed to the finding in Count 1, saying thereby that these defendants did solicit the same sum of money from the same named parties to influence the actions ·of Petree, as a city alderman "for an agreement to attempt to procure the passage of legislation, etc." (being the same legislation). Can there be any question as to repugnancy?

The jury, in effect, is saying: "Mr. Petree, you did not agree to use your influence and to vote for this legislation—but you did agree to attempt to procure passage of this legislation." And under the State's contention, even if the evidence had clearly shown without question that Petree advised the person who offered the bribe that he was going to vote *against* the legislation, and was going to *use his influence against* the legislation, there would be no inconsistency in the finding by the jury verdict that he did agree "to attempt to procure passage of the legislation" as to said zoning matter.

State's counsel relies heavily on *Mobley v. State,* 101 Ga. App. 317, 325 (113 SE2d 654), and quotes extensively therefrom, urging that same "seems to settle these matters." Not so. That case dealt with a three-count indictment, charging (1) forging a check, (2) uttering a check, and (3) possession of check with intent to fraudulently pass same. Defendant was convicted on all three counts. Judge Townsend's opinion deals solely with the question of excessive sentences and proper sentences in cases of this kind. No mention is made of what effect a verdict of not guilty on one of the counts might have had on the other counts. But it is important to note that immediately preceding the .portion quoted in State counsel's brief, Judge Townsend refers (see top of p. 327) to the case of *Davis v. State,* 100 Ga. App. 308, 313 (111 SE2d 116), also written by Judge Townsend, where defendant moved that the State be

required to elect as to which count it would proceed upon, where the offense grows out of one transaction, and holds (p. 313): "The motion to elect in this case raised the question of duplicity in that it was predicated on the fact that both indictments referred to the same offense. It was accordingly a proper motion, and the failure to grant it has resulted in the defendant being under two sentences of punishment for the same offense. Accordingly, the special grounds of each of the motions for new trial raising this question were improperly overruled." But the majority opinion says the trial court ruled favorably to defendants by instructing the jury that defendants could not be *convicted* on both counts. The ruling was definitely unfavorable to the defendants in allowing them to be *tried* on two counts. It was unfavorable to allow the jury to make one decision in favor of defendants and one decision against them—as a compromise perhaps—when the trial court should have made that decision of *only one count* and not left it for the jury to use as a compromise on a verdict, finding the defendants guilty of one-half of the counts with which they were charged.

The majority opinion suggests that prosecutions for multiple offenses are permitted under *Code Ann.* § 26-506 which reads as follows: "(a) When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if (1) one crime is included in the other, or (2) the crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct. (b) If the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution except as provided in subsection (c). (c) When two or more crimes are charged as required by subsection (b), the court in the interest of justice may order that one or more of such charges be tried separately."

But, there is absolutely nothing in this statute which deals with, or in any manner alleviates, the effect of repugnant verdicts. This statute does not suggest that a verdict of not guilty may be

rendered as to one offense and a verdict of guilty rendered as to another offense growing out of the same transaction. Instead, it simply states that the defendant may not be convicted of more than one crime where one crime is included in the other. This is a far cry indeed from a provision which would allow a not guilty verdict as to one offense and a guilty verdict of the other offense where exactly the same facts are proved to support the conviction of each offense.

Further, there is no suggestion by the above statute that the above accused can be tried for each crime twice and that is exactly what was done in the case sub judice. The language of the indictment and the proof is sufficient in Count 1 to convict the defendants of violating both *Code Ann.* § 26-2301 and *Code Ann.* § 26-2304 (b); and the language of Count 2 and the proof were likewise sufficient to convict the defendants of violating both the above statutes.

*Code Ann.* § 26-2301 defines bribery as solicitation by or offering to any official of a political subdivision of this State any reward to which he is not entitled to influence him in performance of *any act related to the functions of his office,* whereas *Code Ann.* § 26-2304 (b) is more limited, and makes it unlawful for solicitation by or offering to any officer of a political subdivision a reward in return for an agreement to procure or attempt to procure passage of legislation by that body of which he is a member.

I repeat, the only difference is that *Code Ann.* § 26-2301 is as to "any act related to functions of his office"—whereas *Code Ann.* § 26-2304 (b) is limited to procuring or attempting to procure legislation of that body of which he is a member.

But the fallacy in the State's contention is that both counts in the indictment in the case sub judice *charge the same acts,* and both counts could have been brought under *Code Ann.* § 26-2301; and likewise both counts could have been brought under *Code Ann.* § 26-2304 (b).

In order for the State's position to be sound, it would have to show that one of the counts could be prosecuted only under one of the above Code sections; while the other count could only be prosecuted under the other of the said above Code sections. Inasmuch as each of them could definitely have been prosecuted under each

of said statutes, the State had no right to try the defendants under two counts which charged the same transaction; and their motion to require the State to elect should have been sustained. Further, the State did not allege "any act related to the functions of his office" under *Code Ann.* § 26-2301, and a specific act of "influencing legislation" under *Code Ann.* § 26-2304 (b); but in both counts it alleged specifically that the alleged bribery was for the purpose of "influencing legislation"—thus specifically using language to bring each count under *Code Ann.* § 26-2304 (b). There could be no valid contention that "multiple prosecutions" are involved as provided for in *Code Ann.* § 26-506, because the same conduct is not shown to establish commission of more than one crime; nor is one alleged crime included in the other; nor does one count charge general conduct while the other charges a specific instance of such general conduct. We repeat that the indictment here alleges specifically the crime of bribery as to "influencing legislation," which is appropriate specifically to *Code Ann.* § 26-2304 (b); and *Code Ann.* § 26-506 is simply not involved in this case.

But the State's position would not be improved if it could be demonstrated that one count was applicable to one of these statutes, and the other count was applicable only to the other statute. This is because a defendant who is indicted twice for the same transaction, although under different statutes, and who is tried and acquitted under the first charge, is entitled to prevent the use of the same evidence against him in the trial of the second charge. In the case of *Harris v. State,* 193 Ga. 109 (2 b) (17 SE2d 573, 147 ALR 980), it was held that the defendant, who was tried and acquitted for murder, and was thereafter indicted for armed robbery in the same transaction, was entitled to have the testimony excluded on the theory of res judicata and estoppel and "the State could not use such testimony to again litigate the controlling issue already determined," and the judgment was reversed. In *Holt v. State,* 38 Ga. 187, defendant was indicted for murder and demanded trial and was discharged on failure of the State to accord him a timely trial; thereafter he was re-indicted for aggravated riot, growing out of the same transaction as the murder charge. A reversal was ordered because he could not be indicted a second time for the same criminal acts, though under a different

named offense. In *Banks v. State,* 150 Ga. 73 (102 SE 519), defendant secured an acquittal of the charge of seduction and at the same term of court the grand jury indicted him for fornication. He filed a plea in bar, alleging that the same transaction was involved. It was held that the trial court erred in striking his plea and "the offense of seduction necessarily embodies, as an element thereof, the offense of fornication. Seduction cannot be accomplished without sexual intercourse . . . If the accused, on the trial for fornication should sustain his plea, he would be entitled to an acquittal." In the case of *Bell v. State,* 103 Ga. 397 (2) (30 SE 294, 68 ASR 102), it is held, "Where a person has been put in legal jeopardy of a conviction of an offense which is a necessary element in and constitutes an essential part of another offense, such jeopardy is a bar to a subsequent prosecution for the latter offense, if founded upon the same act." Here, the first offense was assault and battery, and the last one was assault with intent to commit rape. In *Jones v. State,* 55 Ga. 625 (3), it was held that a defendant who was put in jeopardy under charge of simple larceny could not be tried again for the same offense under the name of burglary. In *Copenhaven v. State,* 15 Ga. 264 (1), it was held that, "A conviction upon an indictment for burglary, is a good plea, in bar, on a trial for robbery, if the circumstances of the robbery were put in proof, in order to make out the case for which the prisoner was tried and convicted on the first indictment; because in such case, the robbery constituted a *part of the same transaction* for which the prisoner was first tried." In *Gully v. State,* 116 Ga. 527, 529 (42 SE 790), the Supreme Court of Georgia held: "There is also another rule, which declares that if the prosecution under the second indictment involves the same transaction which was referred to in the former indictment, and it was or might have properly been the subject of investigation under that indictment, an acquittal or conviction under the former indictment would be a bar to a prosecution under the last indictment. This rule is sometimes called 'the same-transaction test.' The latter rule has been the one adopted and generally followed in this State. In *Roberts v. State,* 14 Ga. 8, Judge Starnes, after stating that there seemed to be some difficulty about applying in all cases the rule known as the same-evidence test, says: 'To avoid any con-

fusion on this subject, we adopt the rule as it is otherwise more generally, and perhaps more accurately, expressed, viz.: that the plea of autrefois acquit or convict is sufficient whenever the proof shows the second case to be the same transaction with the first.' The rule thus laid down was applied in the following cases. *Holt v. State,* 38 Ga. 187; *Jones v. State,* 55 Ga. 625; *Buhler v. State,* 64 Ga. 504; *Goode v. State,* 70 Ga. 752; *Knight v. State,* 73 Ga. 804; *Knox v. State,* 89 Ga. 259. See also, in this connection, *Crocker v. State,* 47 Ga. 568; *Johnson v. State,* 65 Ga. 94 (2); *Craig v. State,* 108 Ga. 776; *McWilliams v. State,* 110 Ga. 290.

"If the two prosecutions really involve the same transaction, the fact that the offense charged in the second indictment is by name a different offense from that which is set forth in the first does not prevent a judgment under the first from being a bar to the second prosecution."

Of considerable analogy to the case sub judice is the holding in *Swain v. State,* 91 Ga. App. 561, 564 (86 SE2d 642): "Where, on the other hand, separate offenses arising out of a single transaction are included as separate counts of an indictment, and the evidence necessary to convict on one of the counts precludes a finding of guilt on the other, the verdict is repugnant." I do not concede that the indictment here charged "separate offenses"—but that it in two places simply charged the same offense. But even so, under the above holdings, even if the offenses had been separate, the result would have been the same and would authorize a reversal of this case.

In the case of *Waters v. State,* 112 Ga. App. 201 (144 SE2d 477), it is held that a plea of former jeopardy is good where the transactions are the same, even though the offense be different as a matter of law. In *Lock v. State,* 122 Ga. 730 (2) (40 SE 932), it is held that a plea of autrefois acquit is sufficient if it alleges the offense in the second indictment is the same *"or could have been made the subject of investigation under the first indictment"* and alleges an acquittal under the first indictment. Surely, it cannot be contended that all of the conduct of the two defendants in the case sub judice could not have been fully *investigated* under the trial of either Count 1 or Count 2. In *Franklin v. State,* 85 Ga. 570 (11 SE 876), defendant was acquitted of simple assault and

thereafter indicted for assault with intent to murder growing out of the same transaction. The court held: "There can be no second jeopardy as to either grade of assault, and as the major includes the minor, the second indictment comprehends the same simple assault of which accused was acquitted in the first indictment." The majority opinion cites several opinions as authority for its position, but they are simply inapplicable; not one of them is a case *where the same facts* would support a conviction of two counts of an indictment. These cited cases are: *Pippin v. State,* 205 Ga. 316 (5) (53 SE2d 482), where similar (not identical) offenses are charged; *Sutton v. State,* 124 Ga. 815 (1) (53 SE 381), where fornication and adultery were charged, and different facts are required to prove whether fornication or adultery; *Lascelles v. State,* 90 Ga. 347 (4) (16 SE 945, 35 ASR 216), forgery charged to have been committed in different ways; *Stewart v. State,* 58 Ga. 577, 580, where one felony was charged to have been committed in different ways; *Hoskins v. State,* 11 Ga. 92 (1) where offenses of different grades charged in same indictment; *Webb v. State,* 47 Ga. App. 505 (170 SE 827), where two felonies charged in one indictment to have been committed at different times.

The verdict of not guilty on Count 1 creates a repugnancy as to the verdict of guilty on Count 2; and the conviction is illegal. I therefore dissent from Headnotes 6 and 7 and the corresponding divisions of the opinion of the majority.

2. On March 13, 1970, a judge of superior court of Atlanta Judicial Circuit issued a warrant and order permitting surveillance of the defendants, including use of recording devices for recording telephone conversations, commonly known as "wire-tapping." The devices were placed in use immediately, the conversations sought to be overheard were "wire-tapped" immediately and defendants were arrested on the same day of issuance of the order, to wit, on March 13, 1970. Under the terms of the applicable Federal statute, to wit: Title 18, USCA, § 2518 (5), it is provided that: "Every order and extension thereof *shall contain a provision* that the authorization to intercept shall be executed as soon as practicable ... *and must terminate upon attainment of the authorized objective* or in any event in thirty days." Under Title 18, USCA, § 2518 (8a) it is provided that: "Immediately upon expiration of the

period of the order or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." If the State court's order did not contain the required language, to the effect that the authorization "must terminate upon attainment of the authorized objective" it was an illegal order. Regardless, the law will write into the order the mandatory language of the statute. This leaves it too clear for argument. The interception was made on March 13, 1971, and the authorization terminated on that day; the State was required to make the recordings available to the issuing judge *immediately, and sealed under his directions.* The State did not comply with the law; it held the recordings out for all of that period from March 13 until April 7th—a time lapse of 25 days, thus rendering same absolutely and completely illegal.

Defendants moved to suppress these tape recordings, and objected to their introduction into evidence, and by stipulation the grounds of motion and objections were made continuing, to apply throughout the trial. Further, when the tape recordings were offered in evidence, objection was made on the ground that the State had not laid a proper foundation for introduction of same. The motion to suppress and the objections to the tape recordings were overruled, and said tape recordings were admitted into evidence on behalf of the State.

There is a Federal statute and a Georgia statute on the subject of surveillance and wire-tapping, both of which are similar, and both of which were enacted in 1968, although the Federal statute was enacted in June, and the Georgia statute was enacted in April. When return of the tape recordings was finally made to the judge, he issued an order in receipt thereof, reciting that his order had been issued *under both Federal and Georgia statutes.*

There can be no question that the Federal statute controls where it occupies the same field of legislation as does the Georgia statute. The Constitution of Georgia of 1945, Art. XII, Sec. I, Par. I (*Code Ann.* § 2-8001) provides that the supreme law of this State is the Constitution of the United States and all laws made in pursuance thereof. The Supreme Court of Georgia has held that where there is a conflict between a Georgia statute and a Federal statute, the Georgia statute must yield to the Federal statute. See

*Southern R. Co. v. Atlanta Sand &c. Co.*, 135 Ga. 35, 39 (68 SE 807). There is a conflict here in that the Georgia statute allows the tape recordings to be returned to the judge who issues the order within 30 days, whereas the Federal statute requires the return *immediately.* New Criminal Code 26-3004 (i) (Ga. L. 1968, pp. 1249, 1328) and Title 18-2518 (8) (a), USCA.

Actually, it is not clear as to whether the majority opinion contends the State law should be applied or the Federal law. It seems to rely on *Federal law* in stating that only contempt can be invoked under Federal statute for making a surveillance in an unauthorized and illegal fashion, although this is clearly and positively a misstatement of the law. But again, it seems to rely on *State law* when suggesting that thirty days are allowed thereunder for return of the order of surveillance, whereas Federal law requires the return to be made immediately when the interception is finished.

But these defendants, and all defendants, are entitled to have all criminal laws construed most favorably towards helping them and most strongly against the State. *Waldroup v. State,* 198 Ga. 144 (30 SE2d 896, 153 ALR 914); *Balkcom v. Defore,* 219 Ga. 641 (135 SE2d 425); *Matthews v. Everett,* 201 Ga. 730 (41 SE2d 148); *Curtis v. State,* 102 Ga. App. 790 (118 SE2d 264); *Carsello v. State,* 220 Ga. 90 (137 SE2d 305). And as the trial judge's order of receipt provided that the order was issued under both State and Federal law, if there is any provision in either or both laws that will help defendants, they are entitled to the benefit of same. The majority opinion seems to entertain the opposite view.

The majority opinion holds that the trial court committed no error in overruling the motion to suppress and in overruling the objections to the evidence, and asserts that the only remedy available to defendants was to invoke the powers of the judge to hold the State of Georgia in contempt of court, citing the Federal statute. It is true that Title 18 USC 2518 (8) (c) provides that for violation of this statute such violator "may" be punished for comtempt of the issuing or denying judge. But contempt of court is not the only remedy. Title 18, USCA, § 2515 provides that no such communication shall be received in evidence "if the disclosure of that information would be in violation of this chapter"

which means that all of the provisions of the chapter respecting the manner of obtaining the communication must be complied with before it is admissible. Again, Title 18, USCA 2518 (10a) allows the aggrieved party to move to suppress the contents of any intercepted communication on various grounds, including the ground that *the interception was not made in conformity with the order of authorization or approval.* We repeat that the law writes into the order (if the judge omits to place same therein) that the authorization ceases immediately upon making the interception, and the record must be made available to the issuing judge immediately.

Defendants' motion to suppress was couched in language concluding with: "The interceptions were not made in comformity with the order of authorization or approval."

As to whether defendants were limited to invoking the contempt powers of the court, that question has been plainly and clearly decided by the Supreme Court of Georgia in *Cross v. State,* 225 Ga. 760 (171 SE2d 507). The State's brief makes this rather amazing statement in reference to same: "To us it is obvious that if we are to go to the federal law, as in *Cross v. State,* 225 Ga. 760, the appellant cannot prevail, because the matter is for the judge who issued the warrant to enforce under his contempt powers and not a ground for suppression."

The majority opinion seems to approve this argument in State's brief. But the *Cross* case (p. 764), holds directly opposite the statement set forth in State's brief, and exactly opposite the majority opinion, as follows: "We think that, without resort to the reasoning applied in the case of Weiss v. United States, 308 U. S. 321 [60 SC 269, 84 LE 298], it is apparent that the language of § 2515, above, is expressly prohibitive of the introduction into evidence of any intercepted communication, be it interstate or intrastate, acquired in violation of the provision of Chapter 119 of 18 USCA. We, therefore, need look only so far as is necessary to determine *whether the provisions of that Act have been complied with, for if they have not, then the reception in evidence of the intercepted message in these cases constitutes reversible error,* and it is unnecessary to a decision of these cases to determine whether the Georgia statute under which the district attorney purported to

act is or is not constitutional, because if Chapter 119 was not complied with a reversal of the conviction is required irrespective of that question." (Emphasis supplied). In the *Cross* case the judgment was reversed.

Further, the objections made by defendants to these tape recordings at the time of their introduction should have been sustained, which objection was that no proper foundation or basis had been laid for such introduction. In *Steve M. Solomon, Jr. v. Edgar,* 92 Ga. App. 207, 211 (88 SE2d 167), it is held that "a proper foundation for their [mechanical transcriptions] use must be made as follows: (1) It must be shown that the mechanical transcription device was capable of taking testimony. (2) It must be shown that the operator of the device was competent to operate it. (3) The authenticity and correctness of the recordings must be established. (4) It must be shown that changes, additions, or deletions have not been made. (5) The manner of preservation of the record must be shown. (6) Speakers must be identified. (7) It must be shown that the testimony elicited was freely and voluntarily made, without any kind of duress." But in the case sub judice there was no evidence as to the competency of the operator of the mechanical device. It was not clearly shown that "changes, additions, or deletions have not been made." To the contrary, one of the State's important witnesses in this respect was Mrs. Juanita Kersey, a respected employee or official in the office of the District Attorney, and who was entrusted with transcribing the tapes to writing. This witness testified that while the tapes were in her custody she transcribed the message into writing, and then returned the tapes to Mr. Boyle; then she had occasion to listen to the tapes again, in the presence of other representatives of the District Attorney, and as to this transaction, she testified: "I listened to them with the gentlemen identified as Mr. Jim Bowen and Mr. Robert Ridley. We listened, *there were things that I heard again that I had not heard before.* There were a few occasions where Mr. Ridley or Mr. Crist said this is what we said. If I did not hear it, if I could not hear it, I told the gentlemen I was sorry that I could not hear what they could hear and I could not put it in my transcript." Thus, instead of the State's carrying the burden of proving a proper foundation, as required by the *Solomon* case,

supra, that "no changes, deletions or additions" had been made, the absolute contrary was proven and that this State's witness, who had control of the tape recording heard things the second time the tape was played that she had not heard before. And, leaving it beyond peradventure as to the tapes having been altered consider the testimony of Dr. Willis Elvis Moody, of Georgia School of Technology, who testified *as an expert* for the defendants that the tapes had been altered. It will be borne in mind, however, that defendants had no burden of proving the tapes had been altered; the burden was on the State to prove they had not been altered.

Before any person is convicted of crime in this State, he is entitled to a *fair and legal trial.* In the language of the learned and eminent jurist, Justice Logan E. Bleckley, almost a hundred years ago (1878) in the case of *Cochran v. State,* 62 Ga. 732: "The State, were it to disregard forms, would not be a government, but a mob. Its action would not be administration, but violence. The public authority has a formal embodiment in the State, and when it moves, it moves as it has said by its laws it will move. It proceeds orderly and according to pre-established regulations. The State, though sovereign, cannot act upon the citizen in a different manner from that which the laws have ordained . . . Courts are bound by the law no less than the prisoner at the bar . . . Why try him at all, if he is not to be tried as the law prescribes?"

Therefore, as an additional reason for reversal, the tape recordings were illegally admitted; and I dissent from the holdings of the majority opinion in Headnotes 2 and 3 and the corresponding divisions of the opinion.

While I have been unable to convince my distinguished associates on this court and this lengthy dissent may seem foolhardy, I would remind those who may have taken the trouble to read this far, if any, that Chief Justice Charles Evans Hughes, in his excellent work entitled "The Supreme Court of the United States," at p. 68 says: "A dissent in a court of last resort is an appeal to the brooding spirit of the law, to the intelligence of a future day, when a later decision may possibly correct the error into which the dissenting judge believes the court has been betrayed."

For all of the foregoing reasons, I would reverse this case.