Hugh ANSLEY, Petitioner-Appellant,

v.

Leroy STYNCHCOMBE, Sheriff, Respondent-Appellee.

No. 72–3189.

United States Court of Appeals, Fifth Circuit.

June 12, 1973.

438

Beverly Agee, John Nuckolls, Edward T. M. Garland, Atlanta, Ga., for petitioner-appellant.

Joel M. Feldman, Asst. Dist. Atty., Arthur K. Bolton, Atty. Gen., Lewis R. Slaton, Carter Goode, Asst. Dist. Attys., Atlanta, Ga., for respondent-appellee.

Before WISDOM, DYER and INGRAHAM, Circuit Judges.

DYER, Circuit Judge:

Ansley was convicted by a jury on the second count of a two count indictment, charging that he aided and abetted Petree, an Alderman of the City of Atlanta, in unlawfully influencing legislative action. Under instructions from the State trial judge, the same jury simultaneously adquitted Ansley on count 1, which charged that he aided and abetted Petree in the solicitation of a bribe. The Georgia Court of Appeals affirmed Ansley's conviction, and both the Georgia Supreme Court and the United States Supreme Court denied certiorari. Ansley v. State, 1971, 124 Ga.App. 670, 185 S.E.2d 562, cert. denied, 1972, 408 U.S. 922, 92 S.Ct. 2503, 33 L.Ed.2d 341. Asserting the same contentions as raised on direct appeal in the State court, Ansley then sought and was denied habeas relief in the district court below. We affirm.

On the basis of an ex parte verified petition of the District Attorney of Atlanta and a supporting affidavit of one of his assistants, a State judge in Atlanta issued an investigative warrant and order authorizing the surveillance of Ansley, including the use of electronic devices, for the purpose of hearing and recording conversations between Ansley

and other named and unnamed persons so as to obtain evidence relating to the bribery charges. Pursuant to this authorization, electronic equipment was installed on telephones in two rooms of a local motel to record telephone conversations between Ansley and Crist, an undercover agent of the District Attorney's office, who was posing as a representative of a land developer. Crist used the telephone to place a long distance call to Ansley. Ansley later returned the call and agreed to travel to Atlanta to meet with Crist at the motel. Other State agents listened to the conversation and recorded it, but of course this was done with Crist's consent. Prior to the time that Ansley arrived at the motel, the District Attorney's office obtained warrants for the arrest of Petree and Ansley. Additional electronic devices were deployed in the motel room and Crist was equipped with a small transmitter to relay all of his conversations with Ansley and Petree, whether inside or outside of the bugged room, to another room where other agents could listen to and record them.

After Ansley arrived at the motel, he met with Crist and other undercover agents, posing as representatives of other land developers. They were joined by Petree and their conversations in the motel room, by the swimming pool, and while in the motel bar were recorded. When it became apparent that the actual bribe was not going to be consummated at that time, Ansley and Petree were arrested pursuant to the warrants obtained earlier. Later the recordings of the conversations were admitted into evidence at Ansley's and Petree's joint trial.

Ansley's first contention on appeal is that the essential elements of count 1 (bribery) and of count 2 (improperly influencing legislative action) are the same and that he was, therefore, twice placed in jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments. Benton v. Maryland, 1969, 395 U.S. 784, 89 S.Ct. 2056, 23 L. Ed.2d 707. Count 1 of the indictment charged Ansley with aiding and abetting Petree in the solicitation of $30,000 for Petree "to use his influence *and* to obtain his vote to secure the passage of" zoning legislation pending before the Atlanta Board of Aldermen in violation of Ga.Code Ann. § 26–2301.[1] In count 2, Ansley was charged with violating Ga. Code Ann. § 26–2304(b)[2] in that he aided and abetted Petree in soliciting $30,000 "for an agreement to procure the passage of" the same pending legislation.

■■ Fundamentally, resolution of this issue depends upon interpretation of the Georgia statutes involved. Great, if not controlling, weight must be given to the Georgia courts' interpretation of these statutes before constitutional issues based on the questioned statutes can be determined by federal courts.[3]

---

1. Ga.Code Ann. § 26–2301 provides:
   A person commits bribery when:
   (1) He gives or offers to give to any person acting for or on behalf of the State or any political subdivision thereof or of any agency of either, any benefit, reward, or consideration to which he is not entitled with the purpose of influencing him in the performance of any act related to the functions of his office or employment; or
   (2) Acting for or on behalf of the State or any political subdivision thereof or of any agency of either, he solicits or receives any such benefit, reward, or consideration. ·
   A person convicted of bribery shall be punished by a fine of not more than $5,000, or by imprisonment of not less than one nor more than 20 years, or both.

2. Ga.Code Ann. § 26–2304(b) provides:
   Any officer or employee of a political subdivision who asks for or receives anything of value to which he is not entitled in return for an agreement to procure or attempt to procure the passage or defeat the passage of any legislation by the legislative body of the political subdivision of which he is an officer or employee shall, upon conviction, be punished by imprisonment for not less than one nor more than five years.

3. *See* Coleman v. Alabama, 1970, 399 U.S. 1, 9, 90 S.Ct. 1999, 26 L.Ed.2d 387;

On direct appeal, the Georgia Court of Appeals explained that § 26–2301 is restricted to bribes to influence an official in *his* performance of any act related to functions of *his* office or *his* employment, whereas § 26–2304(b) includes the sale of the official's influence on *others* who are members of a legislative body. Ansley v. State, *supra*, 185 S.E.2d at 566:

> [To] the extent that it is alleged under Count 1 that Petree, with Ansley as his abettor, solicitated the sale of his own vote as a member of the legislative body, the alleged transaction is an offense. under Code Ann. § 26–2301(2), but should it appear that the solicitation was for an agreement, expressed or implied, to procure or attempt to procure the passage or defeat of legislation, it involves the attempted sale of his influence on other members of the legislative body, and comes under Code Ann. § 26–2304(b). In brief, we see a distinction in accusing Petree, in conjunction with Ansley, of soliciting the sale of his own vote, and in accusing him, in conjunction with another, of soliciting the sale of his influence in procuring favorable legislative action, which might or might not include his own vote.

Thus the Georgia court concluded that the provisions define separate offenses, and we agree that this is a reasonable interpretation.

■ Ansley argues, nevertheless, that he was placed in jeopardy once for soliciting a bribe for Petree to procure the passage of legislation (count 2) when the jury acquitted him on count 1, since the factual allegations in count 1 charged that the solicitation of the $30,000 was for both Petree's vote and his influence. Ansley reasons that, in violation of the Constitution, he was placed in jeopardy a second time for this offense when the jury proceeded to consider the charges in count 2. We disagree. Significantly, even though the facts alleged in count 1 may have improperly embraced violations of both § 26–2301 (influencing Petree in the performance of his official duties—his vote) and § 26–2304(b) (securing Petree's agreement to procure the passage of favorable legislation by whatever means available to him), we think that, in view of the use of the conjunction *and* in count 1, the jury could not have convicted Ansley under that count unless it believed that the agreement was for Petree to sell both his vote *and* his influence. On the other hand, given the language of the indictment, if the jury believed, as it apparently must have, that the agreement was for either the sale of his vote *or* the sale of his influence with the other Alderman *or* for some other method of obtaining passage of the legislation, it could have convicted him only on count 2. Thus, although the facts alleged in count 1 may have improperly implied that that count covered the influence peddling proscribed by § 26–2304(b), this defect does not rise to constitutional dimensions. Indeed, if error at all, this error was in favor of Ansley; for the elements of proof required by count 1 were greater than demanded by § 26–2301. If Ansley had been tried under an undeniably correct count 1, he could have been convicted under § 26–2301—which carries a stiffer maximum sentence than § 26–2304(b)—for merely selling Petree's vote; however, given the actual wording of the indictment, Ansley could only have been convicted under count 1 if the agreement was to sell both Petree's vote *and* his influence. Moreover, assuming that the indictment had been correctly worded and that proper limiting instructions were given to the jury, then if the agreement had been to sell both Petree's

Kingsley International Picture Corp. v. Regents, 1959, 360 U.S. 684, 688, 79 S.Ct. 1362, 3 L.Ed.2d 1512; Albertson v. Millard, 1953, 345 U.S. 242, 244, 73 S.Ct. 600, 97 L.Ed. 983; United States v. Burnison, 1950, 339 U.S. 87, 89, 70 S.Ct. 503, 94 L.Ed. 675; Aero Mayflower Transit Co. v. Board of R.R. Comm'rs, 1947, 332 U.S. 495, 499–500, 68 S.Ct. 167, 92 L.Ed. 99.

vote and his influence, Ansley could have been convicted under § 26–2301 for the sale of Petree's vote and also convicted under § 26–2304(b) for selling Petree's influence with other members of the Board of Aldermen. However, because the State trial judge viewed the crimes as different aspects of the same offense rather than distinct offenses, in accordance with the guidelines of Ga. Code Ann. § 26–506(a)(2), which protect an accused from conviction "of more than one crime if . . . the crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct," he instructed the jury that if it should find Ansley guilty on one count, it was *required* to acquit him on the other. Thus the judge's jury instructions and the wording of count 1 together conferred a benefit on Ansley required neither by Georgia law, as we perceive it, nor by the Constitution. In short, any possible constitutional error concerning double jeopardy was prevented by the trial court's instructions to the jury and by the inclusion of the conjunction *and* in count 1 of the indictment.

Ansley also raises numerous constitutional questions concerning the evidence obtained via the electronic surveillance. First, he maintains that the Georgia statute establishing the procedure for obtaining a warrant for electronic surveillance, Ga.Code Ann. § 26–3001 et seq., is inconsistent with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2510 et seq., and is therefore violative of the Supremacy Clause of the Constitution. This contention is wholly without merit. The interceptions here in question were with the consent of Crist, and 18 U.S.C.A. § 2511(2)(c) expressly provides that it is not unlawful under the Act "for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." Ansley's next argument is also frivolous. He asserts that despite Crist's cooperation and consent to the eavesdropping, this contested evidence was obtained in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. It is now well settled that where a party to a communication consents to another's listening to and recording his conversation, no search or seizure is involved. Nor does the Fourth Amendment protect a wrongdoer from the "risk that his companions may be reporting to the police." United States v. White, 1971, 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453. *See* United States v. Fanning, 5 Cir. 1973, 477 F.2d 45; United States v. Castillo, 5 Cir. 1971, 449 F.2d 1300; United States v. Avila, 5 Cir. 1971, 443 F.2d 792. Equally without merit is Ansley's final contention that, because he was questioned by the undercover agents at the motel without first being given a *Miranda* warning, advised at that time that he was suspected of committing a criminal offense, and arrested pursuant to the warrant obtained earlier, the introduction of the tape recordings at his trial violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. Hoffa v. United States, 1966, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374; Koran v. United States, 5 Cir. 1972, 469 F. 2d 1071.

The district court was correct in denying the writ of habeas corpus.

Affirmed.