## 49848. BAXTER v. THE STATE.

WEBB, Judge.

William E. Baxter, Jr. operated a commercial gambling establishment in a dwelling near Augusta which he had leased. Pursuant to a search warrant, the premises were raided by law enforcement officers on the night of April 12, 1974, during the week of the Masters Golf Tournament. A number of persons, including Baxter,

were arrested, much commercial gambling equipment was seized, and the games were interrupted. As a result, Baxter was tried, convicted and sentenced in the State Court of Richmond County on each of two accusations charging misdemeanors in violation of Code Ann. § 26-2707, "Possession of gambling device or equipment,"[1] and Code Ann. § 26-2703, "Commercial gambling."[2]

Baxter appeals to this court, charging four fouls were committed by the law enforcement officers and the trial court. The alleged errors of which he complains are:

(1) The search warrant was improperly issued on hearsay rather than proper information;

(2) An agent of the Georgia Bureau of Investigation (now Division of Investigation) has no authority to seek and obtain a search warrant;

(3) The search warrant was executed without reasonable notice before forcible entry of the premises.

Because of these three alleged fouls by the law enforcement officers, Baxter contends that the trial court committed error in denying his motion to suppress evidence obtained by the raid and the testimony resulting therefrom. His other alleged foul is:

(4) The conviction and sentence on each of the two accusations are multiple prosecutions and violative of Code Ann. § 26-506 (a).[3]

---

[1] "A person who knowingly owns, manufactures, transfers commercially, or possesses any device which he knows is designed for gambling purposes or anything which he knows is designed as a subassembly or essential part of such device is guilty of a misdemeanor of a high and aggravated nature."

[2] "A person commits commercial gambling when he intentionally does any of the following acts: (a) Operates or participates in the earnings of a gambling place; or (b) Receives, records, or forwards a bet or offer to bet; . . . a person convicted of commercial gambling shall be punished as for a misdemeanor of a high and aggravated nature."

[3] "When the same conduct of an accused may establish the commission of more than one crime, the

We deal with the four alleged errors seriatim.

1. Baxter contends that the affidavit upon which the warrant was based does not constitute a showing of probable cause, that the affiant, Harry G. Coursey, a special agent of the Georgia Division of Investigation, states he received some of his information from a fellow agent, E. P. Peters, who was merely repeating something that had been told him by a confidential informer, that there is no statement that Agent Peters is a reliable source of information, and that the affidavit was hearsay on hearsay.

Special Agent Coursey in his affidavit stated that he personally conducted a surveillance of the premises on April 11, 1974, the day before he appeared before the magistrate, that the premises were those indicated by information as housing a gambling operation, that during his surveillance, Baxter was observed in the vicinity of the premises, and that the confidential information received "by Senior Agent Peters from a reliable un-named informant has been established as accurate by the independent investigations of the affiant . . ."

" ' "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. They are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U. S. 160, 175 (69 SC 1302, 93 LE 1879). There is also a great "difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search." Draper v. United States, 358 U. S. 307, 311-312 (79 SC 329, 3 LE2d 327). As Judge Learned Hand said in United States v. Heitner, 149 F2d 105, 106 (CA 2d Cir.): "It is well settled that an arrest may be made upon hearsay

_____

accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if (1) one crime is included in the other, or (2) the crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct."

evidence; and indeed, the ' reasonable cause ' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties." ' [From *Peters v. State,* 114 Ga. App. 595, 596 (152 SE2d 647)]. We have no hesitancy in adopting and, indeed, reiterating these principles in connection with appellant's contentions respecting the showing of probable cause in this case. The affiant here showed ample facts to authorize the issuing magistrate to conclude that there was probable cause to believe that a crime of the nature set forth in the affidavits had been committed and that evidence of that crime would be produced by a search of the premises described in the affidavits. The fact that much of the affiant's information was derived from informants would not vitiate the warrant." *Strauss v. Stynchcombe,* 224 Ga. 859, 865 (165 SE2d 302); *Johnston v. State,* 227 Ga. 387, 389 (181 SE2d 42); *Pass v. State,* 227 Ga. 730, 734 (182 SE2d 779); *DePalma v. State,* 228 Ga. 272, 276 (185 SE2d 53).

"It is immaterial which policeman received the tip. Observations of fellow officers of government engaged in a common investigation are a reliable basis for a warrant applied for by one of their number." *Buck v. State,* 127 Ga. App. 72, 74 (2) (192 SE2d 432). "When a police officer is the informant the reliability of the informant is presumed as a matter of law." *State v. Causey,* 132 Ga. App. 17, 20 (207 SE2d 225); *McNeal v. State,* 133 Ga. App. 225 (2) (211 SE2d 173).

Code Ann. § 27-303 allows a warrant to issue upon a showing of facts "sufficient to show probable cause that a crime is being committed, or has been committed. The test of probable cause is whether it would justify a man of reasonable caution in believing that an offense has been or is being committed, and this requires merely a probability — less than a certainty but more than a mere suspicion or possibility." (Cits. omitted). *Butler v. State,* 130 Ga. App. 469, 470 (1) (203 SE2d 558); *Geiger v. State,* 129 Ga. App. 488, 492 (1) (199 SE2d 861).

In the case sub judice, the affidavit was not based solely upon information from an unnamed informant, but there was an independent investigation made to cor-

roborate the informant.

We thus hold that there was sufficient showing of probable cause in this case to justify the issuance of a search warrant, and the motion to suppress on the first ground must fail.

2. Baxter's contention is that Agent Coursey, as a member of the Division of Investigation, had no authority to seek and obtain a search warrant, and that the warrant was void.

A search warrant may be issued upon the written complaint of any officer of the state or its political subdivisions charged with the duty of enforcing the criminal laws. Code Ann. §§ 27-303, 27-314. It shall be issued in duplicate and directed to all peace officers of the state. Code Ann. § 27-305. " 'Peace officer' means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses, whether that duty extends to all crimes or is limited to specific offenses." Code Ann. § 26-401 (k).

Members of the Division of Investigation are vested with the same authority, powers and duties possessed by the uniform division of the Department of Public Safety. Code Ann. §§ 92A-302, 92A-242, and 92A-243. Also, the division has specific statutory authority to investigate and make arrests of persons violating the Georgia Drug Abuse Control Act. Code Ann. §§ 79A-208 (f) et seq., 40-3501, 40-3521 and 40-3522.

Additionally, Ga. L. 1937, p. 322, as amended (Code Ann. § 92A-242) provides that: ". . . the Director of Public Safety[4] in unusual circumstances, may, and *in the case of an order from the Governor of Georgia shall,* direct members of the Georgia State Patrol[5] to render assistance

---

[4]This function was transferred to the Commissioner of Public Safety and is, in the case of agents of the Division of Investigation, to be exercised through the Director of the Division of Investigation. Ga. L. 1972, pp. 1015, 1060 (Code Ann. §§ 40-35164, 40-35170, 40-35171).

[5]Members of the Division of Investigation (formerly Georgia Bureau of Investigation) occupy the same status

in any other criminal case, or in the prevention of violations of law, or *in detecting and apprehending those violating any criminal laws* of this, or any other State or the United States." (Emphasis supplied.)

There exists an Executive Order promulgated by Governor Carl E. Sanders which provides in part: "Ordered: That the members of the Georgia Bureau of Investigation so assigned by the Director of the Department of Public Safety in the performance of their duties hereunder be and they are hereby authorized to make arrests in any county or municipality in this state; and it is further ordered: . . . That the Director of the Department of Public Safety be and he is hereby authorized to issue all orders and take any and all necessary action needful to carry out the provisions of this order; and it is further Ordered: That the original of this order be filed in the office of the Secretary of State instanter and shall be effective as of 12:00 noon, E.S.T., July 20, 1964, and shall remain in effect as herein provided until revoked, rescinded or modified by me."[6]

The statutory provision hereinabove cited (Code Ann. § 92A-242) is a deliberate, explicit delegation by the legislature to the Governor of the power to determine when it is necessary for law enforcement officers of the Department of Public Safety to exercise general arrest and investigatory powers. The Executive Order issued pursuant to this statutory provision, until rescinded or superseded, is effective beyond the expiration of the term of the Governor who issued it. The executive power is one of continuing effect, never ending, and unbroken by succession, a principle inherent and necessary to preservation of the stability and the integrity of our constitutional government. State v. Brewster, 140 W. Va. 235 (13) (84 SE2d 231); Barrett v. Duff, 114 Kan. 220, 221 (217 P 918). So issued, the order has the force and effect of

---

in this respect as members of the State Patrol. Ga. L. 1937, p. 322 (Code Ann. § 92A-302).

[6]Executive Minute Book for Gov. Carl E. Sanders 1964, p. 203; *Smith v. State,* 131 Ga. App. 722 (206 SE2d 711); Opinions of Atty. Gen., No. 70-66 (1970) p. 93.

law. *Atkins v. Manning,* 206 Ga. 219, 221 (56 SE2d 260). Cf. *Georgia Public Service Comm. v. Jones Transp., Inc.,* 213 Ga. 514 (1) (100 SE2d 183).

We hold that an agent of the Division of Investigation is a peace officer, that such an agent in the performance of duties assigned to him by the Director of the Division has the authority, in detecting and apprehending those violating any criminal laws of this state, to seek, obtain and execute a search warrant, and that in this case special agent Coursey was so authorized under the laws of Georgia. The second alleged error on which the motion to suppress is predicated fails.

3. The third contention is that the search warrant was executed without reasonable notice before forcible entry of the premises.

Baxter contends that the premises raided under the search warrant were his residence. Most probably it was for that purpose for which the structure was originally built, but the record is replete with testimony and evidence that it was otherwise — five telephones, two telephone lines with distribution blocks that could handle up to twelve telephone lines; a service station bell system to ring a bell in the foyer when a car drove over it; a parking attendant as guard; a buzzer that caused an iron grill gate to open; crap and blackjack tables with poker chips, a beverage bar and a bartender; a waitress who served drinks and steaks; gambling in a big room; some 60 people present each evening; the necessity of ringing the bell for reentry; heavy steel mesh-type wire over the windows, like that used in a law enforcement car to separate the front and back seats; "the front door itself, as you go up to the entrance, had a steel or wrought-iron cage built some 4 to 10 feet across the front door, with an electric lock on it."

Baxter contends that the execution of the search warrant was illegally accomplished because the officers were not in uniform, gave no notice of their intended entry, and forcibly entered the premises by breaking in the doors. Agent Garner, of the Division of Investigation, testified at the hearing on Baxter's motion to suppress: ". . . I came from the side of the house to the front door and grabbed the iron door and hollered, 'State Police, open the

door, State Police.' The door was obviously locked. I hollered, 'State Police, we've got warrants, open the door,' and nobody responded, and agent — by this time, agent Monahan was ringing the buzzer, still no reactions. I had a — the agent with me, agent Tim Jones' job was to carry a sledge hammer or any tool we used to get in with, and he was carrying a sledge hammer. I told agent Jones to take the lock off this iron door, which he did — he went through the iron work. All right, then I beat on the entrance to the house and hollered 'State Police, open the door' — no reaction, and then there was no reaction, I kicked the door, and when I kicked the door it was obviously heavily locked or something, and I told agent Jones to take the door down. You know, he went to work on it with a sledge hammer, hit the lock — he hit the lock several times, but it was a good door and it was locked. We finally got the door off the locks and went into the house. It opens up into a foyer, we went straight through the house back straight through the eating area where all the people were congregated, and into the playing room where the dice tables and card tables were. Q. Can you or can you not give us the time that you first rattled that iron door to the time you finally entered the premises through the second door? A. I'd say approximately two minutes, because we didn't have a lot of trouble with the front door, the iron door, but the main entrance to the house, it took a good while to get that door down — it was a good door."

On the use of force in execution of a search warrant, Code Ann. § 27-308 (Ga. L. 1966, pp. 567, 570) provides: "All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant, if after verbal notice, or an attempt in good faith to give verbal notice by the officer directed to execute the same of his authority and purpose, (a) he is refused admittance, or (b) the person or persons within said building or property or part thereof refused to acknowledge and answer said verbal notice, and the presence of such person or persons therein is unknown to such officer, or (c) the building or property or part thereof is not then occupied by any person."

We know of no requirement that a law enforcement officer shall wear a uniform when executing a search

warrant.

Requirements for lawful entry under a search warrant were held by this court to be met where "The officers knocked at the door, identified themselves, and after receiving no response, permitted a reasonably sufficient interval of time to elapse before exercising physical force to enter the premises." *Jackson v. State,* 129 Ga. App. 901, 905 (e) (201 SE2d 816).

"On motion to suppress evidence, the trial judge sits as the trior of the facts, hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it," and ". . . where there is a conflict in the evidence on the motion to suppress, *the ruling of the trial court will be upheld where there is any evidence to authorize a finding in support of his order.*" (Emphasis supplied.) *State v. Swift,* 232 Ga. 535, 536 (207 SE2d 459), and citations.

We hold that there is no merit in the third alleged error that the search warrant was wrongfully executed by failure to give notice, and the trial judge did not err in overruling the motion to suppress evidence seized and testimony given as a consequence of the search warrant.

4. Baxter's fourth alleged error is that the conviction and sentence on each of the two accusations are multiple prosecutions and violative of Code Ann. § 26-506 (a). He was charged, tried, convicted and sentenced for possession of gambling devices and equipment, and for the offense of commercial gambling by operating a gambling place.

Although arising from the same transaction, the offenses of possession of gambling devices and equipment, and commercial gambling by operating a gambling place, are separate and distinct. "The offenses of burglary and possessing burglary tools are separate and distinct, and an accused may be convicted of both offenses, even though they are committed in the same transaction. *Shelly v. State,* 107 Ga. App. 736 (1) (131 SE2d 135). Where the offenses of burglary and possessing burglary tools are committed in the same transaction, an indictment is not illegal because it contains a count charging burglary and a count charging the possession of burglary tools." *Smith v. Ault,* 230 Ga. 433 (1, 2) (197 SE2d 348).

The illegal possession of cocaine and the illegal sale of cocaine are separate crimes as a matter of law, but since the possession and sale was *one transaction* it was held both convictions could not stand. *State v. Estevez,* 232 Ga. 316, 320 (206 SE2d 475). In *Roberts v. State,* 228 Ga. 298 (185 SE2d 385), it was held that conviction for armed robbery and aggravated assault with a deadly weapon were authorized although both crimes arose out of the same conduct.

There are different elements present in the two crimes of possession of gambling devices or equipment, and operating a gambling place — commercial gambling as defined by Code Ann. § 26-2703. Proof of the possession of gambling devices or equipment would not prove that the accused was engaged in commercial gambling, and counsel for Baxter concede that he was in possession of gambling devices and equipment. Proof of the offense of commercial gambling would not of necessity prove that he was in possession of gambling devices and equipment. Although three of those present on the night of the raid invoked the Fifth Amendment, two of Baxter's employees, the bartender and a waitress, each testified that, based on remarks of the patrons and what they knew, there was gambling in the place. This testimony, together with the facts adduced as to the entrance, doors, windows, telephones, and attendants, would support a jury verdict of the offense of operating a gambling place irrespective of the possession of gambling equipment. Neither of the offenses is a necessary element in, and constitutes an essential part of, the other offense. Neither is included in any other crime for which he was convicted nor is either crime defined to prohibit conduct generally where the other prohibits a specific instance of such conduct. *Rowe v. State,* 232 Ga. 700 (208 SE2d 500); *Harvey v. State,* 233 Ga. 41 (209 SE2d 587). They are in law separate and distinct offenses, and may be punished as separate crimes. There is no merit in this assignment of error.

*The judgment of the trial court is affirmed. Bell, C. J., Quillian, Clark and Marshall, JJ., concur. Pannell, P. J., dissents separately as to Division 4. Deen, P. J., Evans and Stolz, JJ., dissent as to Division 4.*

ARGUED NOVEMBER 5, 1974 — DECIDED FEBRUARY 21, 1975 —
REHEARING DENIED MARCH 14, 1975 — 

*Harris, Chance & McCracken, Kenneth R. Chance,* for appellant.

*J. Edward Slaton, Solicitor, Herbert E. Kernaghan, Jr., Assistant Solicitor,* for appellee.

DEEN, Presiding Judge, dissenting.

I dissent here because I believe we are still confused over the construction of Code Ann. § 26-505 as discussed on the latest and most exhaustive statement by our Supreme Court: *State v. Estevez,* 232 Ga. 316 (206 SE2d 475), affirming our reversal of a conviction by a full bench decision. It appears to me that the logic of that decision requires a reversal of the present case.

*Estevez* states succinctly that Code Ann. § 26-505 (a) (where although two crimes are alleged, there can be only one punishment where all the elements of *proof* of one crime are necessary to prove the other "as a matter of fact") relates to the evidence adduced, and subdivision (b) (where the difference between the two crimes charged is that one involves more culpability than the other, as e.g. simple assault and aggravated assault) relates to the offenses charged as a matter of law. The case emphasizes that whereas prior to 1968 the defendant had to show included crimes to be such *both* as a matter of fact and as a matter of law in seeking single rather than multiple sentences, he now only has to show under (a) that they are the same as a matter of fact (the single transaction test) *or* as a matter of law (the definition test). If they are included crimes, though they are separate and may be charged and tried in a two-count indictment, only one punishment may be meted out if all elements of one fit into the other either as a matter of fact or as a matter of law.

In this case the defendant was charged in two counts with possessing gambling equipment and with commercial gambling. Gambling equipment is defined as any "device" designed for gambling purposes. The facts of this case as testified to show the defendant possesses

gambling paraphernalia including dice tables, poker chips, etc. It also shows that when raided these "devices" were being used in the operation of a gambling casino and that gambling was going on at the time. The proof therefore shows a single transaction as a matter of fact, and this transaction includes possession *and* use for commercial gambling of the proscribed devices.

In *Estevez* the defendant was charged with the possession of cocaine and the sale of cocaine. The evidence, as here, showed one sale, of which possession was a component. Although the crimes were separate as a matter of law, the transaction was single as a matter of fact, and only one sentence could be imposed.

Here the possession of the device and the use of the device for commercial gambling, although separate crimes as a matter of law, are shown by the evidence to be a single transaction as a matter of fact. Therefore only one sentence can be imposed.

The last paragraph of the majority opinion states: "Neither of the offenses is a necessary element in and constitutes an essential part of, the other offense. . . They are in law separate and distinct offenses." This is true and wipes out Code Ann. § 26-505 (b) which deals with offenses separate as *a matter of law*. But it does not wipe out § 26-505 (a) because all of the evidence in this case involves the possession *and* use of the "device" as a single transaction.

*Estevez* held: "In the instant case, however, the evidence required to convict of illegal sale was the only evidence showing possession. Therefore, as concluded by the Court of Appeals, the illegal possession was included in the crime of illegal sale *as a matter of fact* under Code Ann. § 26-505 (a)."

In the case at bar, the evidence required to convict of illegal commercial gambling was the only evidence showing possession of gambling equipment, and the illegal possession is included *as a matter of fact* in the crime of illegal use.

I concur with Judge Evans' dissent, and write this primarily to emphasize my conclusions both that *Estevez* is the controlling authority on the *single transaction* test and that the possession-cum-use here cannot be

distinguished from the possession-cum-sale there. See *Hibbs v. State,* 133 Ga. App. 407 (211 SE2d 24) where possession and sale of marijuana affirmance appears to be inconsistent with *Estevez.*

Although my view as to merger (see *Thomas v. State,* 128 Ga. App. 32 (195 SE2d 681); *Sullivan v. State,* 129 Ga. App. 231 (199 SE2d 373); *Reeves v. State,* 128 Ga. App. 750 (197 SE2d 843); *Burns v. State,* 127 Ga. App. 828 (195 SE2d 189); *Sturgis v. State,* 128 Ga. App. 85 (195 SE2d 682)) was overruled in *Estevez,* this Supreme Court case is the latest expression and should be followed.

I am authorized to state that Judges Evans and Stolz concur in this dissent.

EVANS, Judge, dissenting.

I dissent as to Division 4 of the majority opinion, which affirms the trial court in allowing two separate convictions to stand, although the evidence in support of each charge was exactly the same.

Defendant was tried in State Court of Richmond County under two separate accusations, tried at the same time, one of which was brought under Code Ann. § 26-2703, and the other being brought under Code Ann. § 26-2707. The first statute above named penalizes "commercial gambling," that is, the very act of engaging in commercial gambling; while the second statute above named penalizes "possession of gambling devices or equipment." Evidence was introduced which was sufficient to authorize the jury to determine that defendant was the owner and operator of a commercial gambling house, where gambling devices and equipment were maintained, and where gambling was going on.

The question for determination by this court here is whether defendant could be convicted *on two separate charges,* under the same evidence, all of which related to the same time and place? Could defendant be convicted of *commercial gambling* and, at the same time, separately convicted of *possession of gambling equipment?* Is the latter charge as to *possession of gambling equipment,* under these circumstances merged into the offense of *commercial gambling?*

Defendant properly raised this defense and objections in the trial court, and enumerates error

thereon.

A person may *possess gambling devices and equipment* without *operating a gambling house,* for instance, if the raid is made at 6:00 a.m., after all patrons have gone home and the operator has retired. But it is impossible to conceive of the *operation of a gambling house* without at the same time *possessing and having therein gambling devices and equipment.* This very situation is dealt with in Code Ann. § 26-506 (a) as follows: "When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if (1) one crime is included in the other, or (2) the crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct."

Hence, if one crime is included in the other, the defendant may be prosecuted for each crime, *but may not be convicted of more than one of such crimes.* It seems quite plain that the crime of possession of gambling equipment merges into the crime of operation of a gambling house, where the evidence relates to one specific time, place, and course of conduct. The majority opinion states that: "Proof of the offense of commercial gambling would not of necessity prove that he was in possession of gambling devices and equipment." We take violent issue with this assertion. How could the owner of a gambling house, *as the evidence showed defendant to be,* engage in commercial gambling without possessing gambling devices and equipment? Commercial gambling envisages more than making bets on the outcome of a football game; it folds up and ends when there is no gambling equipment provided by the "house."

In *Wells v. State,* 126 Ga. App. 130, 132 (190 SE2d 106), this court held that selling and distributing drugs included the offense of possession of drugs, using the following language: "The indictment shows that the two offenses allegedly took place on the same date. The evidence conclusively shows that defendant's arrest arose out of a single transaction. According to the State's witnesses only the drugs sold to the State's witness Ailiff

were found to have been in the defendant's possession. Thus defendant's conviction of the offense of illegal selling and distributing LSD necessarily included the offense of possessing LSD and vice versa. While it was proper to indict for both offenses, try both offenses together, it was not proper under Code Ann. § 26-506 (a) to convict on both counts of the indictment, and the trial court erred in so charging the jury."

In *Sturgis v. State,* 128 Ga. App. 85, 86 (195 SE2d 682), this court held that selling and distributing heroin necessarily included the offense of possession of heroin and reversed the conviction.

The Supreme Court of Georgia, in a very recent decision (May 28, 1974) in *State v. Estevez,* 232 Ga. 316, 320, makes it abundantly clear that the offense of possession of cocaine merges into the offense of selling cocaine and defendant can not be convicted of both, using this language: "The Court of Appeals in its opinion stated (Hn. 3), 'The defendant contends: "The trial court erred in submitting both counts of the indictment against appellant to the jury where the contraband or evidence allegedly *possessed* by appellant in Count One . . . was the *same* evidence upon which the charge of selling (Count Two) was based, all arising out of the *same* transaction, in violation of Code Ann. § 26-506 (Ga. L. 1968, pp. 1249, 1267)." With the defendant's contention we agree.' This is erroneous. An accused may be prosecuted for each crime arising from the same conduct. The proscription is that he may not be convicted of more than one crime if one crime is included in the other. Code Ann. § 26-506."

See *Ansley v. State,* 124 Ga. App. 670, 685 (185 SE2d 562): "In *Banks v. State,* 150 Ga. 73 (102 SE 519), defendant secured an acquittal of the charge of seduction and at the same term of court the grand jury indicted him for fornication. He filed a plea in bar, alleging that the same transaction was involved. It was held that the trial court erred in striking his plea and 'the offense of seduction necessarily embodies, as an element thereof, the offense of fornication. Seduction cannot be accomplished without sexual intercourse . . . If the accused, on the trial for fornication should sustain his plea, he would be entitled to an acquittal.' In the case of

*Bell v. State,* 103 Ga. 397 (2) (30 SE 294, 68 ASR 102), it is held, 'Where a person has been put in legal jeopardy of a conviction of an offense which is a necessary element in and constitutes an essential part of another offense, such jeopardy is a bar to a subsequent prosecution for the latter offense, if founded upon the same act.' Here, the first offense was assault and battery, and the last one was assault with intent to commit rape. In *Jones v. State,* 55 Ga. 625 (3), it was held that a defendant who was put in jeopardy under charge of simple larceny could not be tried again for the same offense under the name of burglary. In *Copenhaven v. State,* 15 Ga. 264 (1), it was held that, 'A conviction upon an indictment for burglary, is a good plea, in bar, on a trial for robbery, if the circumstances of the robbery were put in proof, in order to make out the case for which the prisoner was tried and convicted on the first indictment; because in such case, the robbery constituted a *part of the same transaction* for which the prisoner was first tried.' In *Gully v. State,* 116 Ga. 527, 529 (42 SE 790), the Supreme Court of Georgia held: 'There is also another rule, which declares that if the prosecution under the second indictment involves the same transaction which was referred to in the former indictment, and it was or might have properly been the subject of investigation under that indictment, an acquittal or conviction under the former indictment would be a bar to a prosecution under the last indictment. This rule is sometimes called 'the same-transaction test.' The latter rule has been the one adopted and generally followed in this State. In *Roberts v. State,* 14 Ga. 8, Judge Starnes, after stating that there seemed to be some difficulty about applying in all cases the rule known as the same-evidence test, says: 'To avoid any confusion on this subject, we adopt the rule as it is otherwise more generally, and perhaps more accurately, expressed, viz.: that the plea of autrefois acquit or conviction is sufficient whenever the proof shows the second case to be the same transaction with the first.' The rule thus laid down was applied in the following cases. *Holt v. State,* 38 Ga. 187; *Jones v. State,* 55 Ga. 625; *Buhler v. State,* 64 Ga. 504; *Goode v. State,* 70 Ga. 752; *Knight v. State,* 73 Ga. 804; *Knox v. State,* 89 Ga. 259. See also, in this connection, *Crocker v. State,* 47 Ga. 568;

*Johnson v. State,* 65 Ga. 94 (2); *Craig v. State,* 108 Ga. 776; *McWilliams v. State,* 110 Ga. 290.

"'If the two prosecutions really involve the same transaction, the fact that the offense charged in the second indictment is by name a different offense from that which is set forth in the first does not prevent a judgment under the first from being a bar to the second prosecution.'"

The majority opinion cites *Shelly v. State,* 107 Ga. App. 736 (131 SE2d 135), and *Smith v. Ault,* 230 Ga. 433 (197 SE2d 348), wherein each case holds that the *offense of possession of burglary tools* is separate and apart from the *offense of burglary,* and one may be convicted of both at the same time. The distinction is obvious. One may commit a burglary without any tools whatever; but an operator of a commercial gambling house cannot operate without gambling equipment. The majority opinion also cites *Roberts v. State,* 228 Ga. 298 (185 SE2d 385), which holds that the crimes of armed robbery; aggravated assault with a deadly weapon; possession of firearms during the commission of a crime; and theft of a motorcycle are separate crimes and neither merges with the others. Again, the distinction is that each of these offenses may be committed without reference to the other.

In conclusion, in the present case the offense of "possession of gambling devices and equipment" merged with the offense of "operating a commercial gambling house." Under Code Ann. § 26-506 (a), conviction of the latter offense precluded a conviction of the former. The state presented the same evidence as to each count, showing the identical conduct by the identical defendant, at the same time and at the same place.

I am authorized to state that Presiding Judge Deen and Judge Stolz join in this dissent.