### 54561. LOVE v. THE STATE.

SMITH, Judge.

For the reason that the warrantless seizure of drugs from the appellant's automobile and motel room was unreasonable as a matter of law, it was error to deny a motion to suppress the seized evidence, and the judgment of conviction and sentence based on that evidence must be reversed.

Investigator Matthews of the Fulton County district attorney's office received certain information from a confidential informant over a several day period in September, 1976. Basically, the informant relayed information about two men, boasting about having

robbed a drug salesman in Columbus, Ga., and looking for a buyer for the drugs. Matthews testified that he was informed on the morning of September 12, 1976, that the men were traveling in a silver Lincoln Continental Mark IV and were staying in Clayton County at the Century Motel in room 222. Also, the informant supplied a description of one of the men, whom the informant thought to be a fugitive because he "always stayed in the background and always wore, even during the night or dark time, wore sunglasses."

Investigator Matthews had been relaying his information to Inspector Angel, supervisor of the GBI Fugitive Squad, who had independently received information from his own informant telling him that an Alabama prison escapee named Sammy McQuirk was in the Atlanta area along with two other fugitives, Jerry Miller and Johnny Lowe. Angel's informant believed that McQuirk was trying to sell a large quantity of drugs. Angel had arrested McQuirk two years earlier and remembered his physical appearance. The description relayed to him via Investigator Matthews led Angel to conclude that both Matthews and he, Angel, from their respective confidential informants, were receiving information about the same man, McQuirk.

Upon receiving word from Matthews that the two men were at the Century Motel, Angel dispatched several agents from the fugitive squad to the area, expecting to arrest McQuirk, the Alabama fugitive. About two hours later, Angel arrived on the scene and was informed that the described Lincoln Continental had been located, and that an individual had exited the motel, entered the automobile, and returned to the motel. Agents checked the automobile, but found it locked. After determining that the occupants of room 222, who registered in the name of Bruce Love, had indicated an intention to remain in the room another night, Angel began to arrange a stake-out of the room, in anticipation of arresting McQuirk when he exited. For their safety, occupants of nearby rooms were evacuated. Shortly thereafter, Angel and two other agents, apparently while moving to stake-out posts, were passing immediately in front of the door to room 222 when it opened and two men walked out.

Within seconds, six law enforcement officers, at least three of them brandishing pump-action, buckshot loaded, riot shotguns, confronted the two men, one of whom was the appellant Bruce Love and neither of whom was Alabama fugitive McQuirk, whom Angel would have recognized on sight.

The appellant and his companion, hands up as ordered, were forced at gunpoint back into the room, against a wall, where they were searched. Wallets, personal papers, and keys, but no weapons, were removed from their persons. Inspector Angel announced that he was looking for fugitives, and the two captives identified themselves as Bruce Love and Eugene Padgett, identities which comported fully with the driver's licenses and personal papers seized from the men.

An agent who had conducted surveillance earlier that morning noted that Love was the person who had visited the parked Lincoln. Angel asked Love about the car and Love denied having any knowledge of it. Angel asked him about a set of Ford product keys which were seized from Love's pocket during the search; Love denied having any knowledge of them. Angel then asked whether there was any objection to seeing whether the keys fit the Lincoln, and Love voiced no objection.

Agent Meeks left the room with the keys, ostensibly to see if they "fit" the Lincoln, and unlocked and searched the trunk, then the passenger compartment, of the Lincoln. Inside the trunk, he found a large quantity of controlled drugs. On cross examination, Meeks frankly admitted that his purpose in going to the car was to search it: "Q. Now, Agent Meeks, your purpose when you went down there with this key, you were to search the trunk of that automobile, wasn't it? A. Yes, sir, to look in the car, yes, sir." Meeks returned to room 222 and communicated his discovery to Angel who then "officially arrested" Love and Padgett. The room then was searched and further contraband was located.

I. Motion to Dismiss the Appeal.

A. The state's motion to dismiss the appeal is denied. The appellant filed a motion for new trial, which was properly denied by the trial court following disclosure that the appellant had escaped and was without the

jurisdiction of the court. *Huffaker v. State,* 122 Ga. App. 773, 775 (178 SE2d 718) (1970). Following the dismissal of the motion, the appellant was returned to prison, and the appeal to this court was filed within thirty days of the order dismissing the motion. The facts that the motion for new trial was dismissed, and that the appeal was not filed within thirty days of the judgment of sentence and conviction, do not require dismissal of the appeal. So long as the notice of appeal is filed within 30 days following "the entry of the order granting, overruling, or *otherwise finally disposing* of the motion" for new trial, the appeal is timely. (Emphasis supplied.) Appellate Practice Act § 5 (Ga. L. 1965, pp. 18, 21; Ga. L. 1966, pp. 493, 496; Code Ann. § 6-803); *Harrison v. Harrison,* 229 Ga. 692 (194 SE2d 87) (1972); *Dodson v. Dodson,* 231 Ga. 789 (204 SE2d 109) (1974). Dismissal of the motion is such an order "finally disposing" of the motion.

B. Nor, as the state contends, did dismissal of the motion for new trial establish the "law of the case" as to those allegations of error raised in the motion. This court, fairly recently, has held that abandonment of a motion for new trial establishes as the law of the case all of the grounds of the motion, and none of the grounds of the motion can later be considered on appeal. *Ruff v. State,* 132 Ga. App. 568 (1) (208 SE2d 581) (1974). However, the *Ruff* decision was based on the holding in *Munn v. Kelliam,* 228 Ga. 395 (185 SE2d 766) (1971). When *Munn* was again relied upon, subsequent to *Ruff,* in *Gold Kist, Inc. v. Stokes,* 135 Ga. App. 382 (217 SE2d 352) (1975), establishing as the law of that case the grounds contained in the dismissed motion for new trial, the Supreme Court granted certiorari and reversed. *Gold Kist, Inc. v. Stokes,* 235 Ga. 643 (221 SE2d 49) (1975). The Supreme Court relied upon *Harrison v. Harrison,* 229 Ga. 692, supra, and *Checker Cab Co. v. Fedor,* 134 Ga. App. 28, 29 (213 SE2d 485) (1975), to conclude that the law of the case was *not* established by the dismissal of a motion for new trial. Accordingly, we are required to reach the merits of the appellant's enumerations of error.

II. The Search and Seizure.

The facts of this case, and the state's attempt to fit them within an exception to the warrant requirement,

compel the writer once again to reiterate the admonition of Justice Stewart in Coolidge v. New Hampshire, 403 U. S. 443, 454 (91 SC 2022, 29 LE2d 564) (1971), that "the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' " *Hatcher v. State,* 141 Ga. App. 756, 758 (234 SE2d 388) (1977) (Judge Smith dissenting) and *Allen v. State,* 140 Ga. App. 828, 839 (232 SE2d 250) (1976) (Judge Smith dissenting). When these guidelines are applied to the facts of this case, the nonapplicability of the recognized warrant requirement exceptions becomes apparent.

First, the record of evidence developed at the hearing on the motion to suppress and at trial, and the state's brief, do not reveal even the most oblique or tangential attempts to fit the search here within the exceptions known as "hot pursuit," "stop and frisk," or "plain view." Indeed, the facts are not remotely suggestive of any of these doctrines, so their applicability here will not be further considered.

The facts vaguely suggest the scenario of a search incident to a lawful arrest, so this possibility will be considered briefly. Likewise, at the hearing on the motion to suppress, the state emphasized evidence tending to show a consent to search the automobile. The contention is a weak one, and since it is not argued in the state's brief, it, too, will be considered only briefly.

The primary thrust of the state's argument is an attempt to fit the facts here within the Carroll doctrine, or so-called "automobile exception," named for Carroll v. United States, 267 U. S. 132 (45 SC 280, 69 LE 543) (1925). The doctrine, as explicated, requires the coalescence of probable cause to search and exigent circumstances requiring an immediate search. The discussion below will show that the state has not met its burden of establishing these components; thus the Carroll

doctrine, too, is inapplicable.

A. Search incident to lawful arrest. Even assuming that the agents had probable cause to arrest Love and Padgett (as fugitives, the state contends) immediately upon confronting them outside their motel room, the record reveals no evidence demonstrating that the automobile was sufficiently within the arrestees' vicinity and immediate control such that they might retrieve from it either a weapon or destructible evidence. Absent such a showing, the search of the automobile is not justifiable as a search incident to a lawful arrest. Chimel v. California, 395 U. S. 752, 762-763 (89 SC 2034, 23 LE2d 685) (1969). Likewise, the state has not met its burden of showing that the ultimate search of the motel room could be construed as incident to an arrest of the men immediately upon confronting them in the hallway. And, finally, the ultimate search of the room cannot be deemed incident to a lawful arrest for possession of drugs, for, as will be developed below, the probable cause for such an arrest was based upon illegally seized evidence; thus the arrest was not lawful.

B. Consent. Any belief that the vehicle search was pursuant to consent fails on two counts. First, assuming the existence of any voluntary consent at all, the only consent apparent in the record was consent to see if the keys seized from Love's pocket "fit" the Lincoln Continental the agents had been watching. This was the outer extent of investigation consented to; the scope of the consent clearly did not extend to a full-blown search of the interior and trunk of the vehicle. Agent Meeks testified that his purpose in taking the keys out to the car was "to look in the car," which he did at some length. We know of no case which has allowed police officers arbitrarily to expand the scope of a consent search. See, e.g., United States v. Dichiarinte, 445 F2d 126 (7th Cir. 1971); People v. Schmoll, 383 Ill. 280 (48 NE2d 933) (1943).

Moreover, we cannot conclude that the limited consent which was given was voluntary. The situation here — where the two men were surprised by a half-dozen heavily armed lawmen, were searched at gunpoint, and were immediately thereafter asked to consent to a matching of the keys found in Love's pocket to an

automobile in the parking lot — defies a conclusion that the consent was, under all the facts, voluntary and not the product of duress or coercion, express or implied. Schneckloth v. Bustamonte, 412 U. S. 218 (93 SC 2041, 36 LE2d 854) (1973). A fuller exposition of the principles relevant here may be found in the factually and analytically similar case of United States v. Whitlock, 418 FSupp. 138, 144 (E.D. Mich. 1976).

C. The Carroll doctrine, or "automobile exception." Since the 1923 decision in Carroll v. United States, 267 U. S. 132, supra, it has been apparent that somewhat more relaxed rules pertain to warrantless searches of cars, boats, and other movable vehicles as opposed to dwellings, motel rooms, and other stationary premises. However, Division II-B of Coolidge v. New Hampshire, 403 U. S. 433, 458-464, supra, could not have made it more explicit that "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears" (403 U. S. pp. 461-462), and that a Carroll doctrine search must be predicated on both probable cause *and exigency*. In this case, we find that the state has proved neither probable cause nor exigency; consequently, the Carroll doctrine is inapplicable.

1. Probable Cause. Given the constitutional preference for warrants, it becomes axiomatic that the standards for determining probable cause in a warrantless search setting must be at least as demanding as the standards for determining probable cause when a warrant is being sought. Accordingly, upon judicial review of whether probable cause existed at the time of the search, "the standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged . . . search are at least as stringent as the standards applied with respect to the magistrate's assessment." Whiteley v. Warden, 401 U. S. 560, 566 (91 SC 1031, 28 LE2d 306) (1971).

The source for probable cause to search the Lincoln Continental, if any, was the tip from a confidential informant. Had this data been submitted to a magistrate, and had the magistrate issued a warrant to search the vehicle, it is clear that the magistrate's determination of probable cause would not be upheld in this court absent an

affirmative showing of three elements: (1) That the magistrate was given adequate information to conclude the informant was reliable (E.g., *McGuire v. State,* 136 Ga. App. 271, 273 (220 SE2d 769) (1975); *Bell v. State,* 128 Ga. App. 426, 427 (196 SE2d 894) (1973)); (2) that the magistrate was apprised of how the informant received his information, or else the informant's tip described the criminal activity in such detail that the magistrate would know it to be more than a casual rumor circulating in the underworld or an accusation based merely on an individual's reputation (E. g., *Cochran v. State,* 136 Ga. App. 94, 96 (220 SE2d 83) (1975); *Lowery v. State,* 135 Ga. App. 423 (218 SE2d 132) (1975); *Bell v. State,* supra); and (3) the magistrate was shown that the informant's tip was current, not stale. (E.g., *Lowery v. State,* supra; *Hurd v. State,* 131 Ga. App. 354 (206 SE2d 114) (1974); *Bailey v. State,* 131 Ga. App. 276 (205 SE2d 532) (1974); *Bell v. State,* supra).

A police officer's assessment of probable cause based on an informant's tip should encounter no less scrutiny. Accordingly, for this court to sustain a police officer's determination of probable cause, the state, at the hearing on the motion to suppress, is required to produce evidence showing (1) that the police officer had facts leading him to believe that the informant was reliable, (2) that the police officer knew how the informant received the information or else had such detailed information that he knew it to be more than mere rumor or suspicion, and (3) that the police officer knew the information was current.

This case involves several communications with informants, but the only one which would support probable cause to search the car came on the day of the search, when Investigator Matthews of Fulton County received a tip that the men were at the Century Motel in a silver Lincoln with drugs in the trunk. Matthews then relayed this information to Angel, who ultimately instigated the search. There was some testimony at the suppression hearing which would support a conclusion that Angel had information from which he could conclude that the informant's tip was current, and that it was so detailed that it was not likely to be mere rumor or suspicion. Thus, requirements (2) and (3) arguably are

satisfied. However, the record is completely void of *any* evidence which shows that Angel was in possession of information from which he could conclude that Matthews' informant was reliable. True, Matthews testified that *he* thought his informant to be reliable, but nowhere is it suggested that he communicated this fact or belief, and the reasons for it, to Angel. In the absence of any evidence to support a conclusion that Angel had facts from which to determine the informant's reliability, it was error for the trial court to conclude at the suppression hearing that he had probable cause to search the vehicle.

2. Exigent Circumstances. "[N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' " Coolidge v. New Hampshire, 403 U. S. 443, 468, supra. In Coolidge, there clearly was probable cause, "but no exigent circumstances justified the police in proceeding without a warrant." 403 U. S. p. 464.

Whether exigent circumstances precluded obtaining a warrant is a question of fact to be determined by the trial court. In this case, the trial court, at the suppression hearing, concluded that there was probable cause to search the vehicle, that *there was time to obtain a warrant* (hence, no exigent circumstances), but that no warrant was necessary. The transcript shows the following statement by the trial judge: "While there may of have been a probability, insofar as time and motion is concerned, they could have gotten a warrant, that is not the sole criteria whether or not a warrant is necessary. I know of no law, no principle of law, and no amendment to which say that you must get a search warrant merely because you have enough time, provided the circumstances exist that would warrant a warrant of search."

The trial court's factual conclusion that there was time to get a warrant — thus, that there were no exigent circumstances — is supported by evidence and we must defer to it. The court's legal conclusion that the officers could search on the strength of probable cause alone is erroneous under Carroll and its progeny, especially Coolidge, so we must reverse it. Even had there been probable cause to search the vehicle, this lack of exigent

circumstances renders the Carroll doctrine inapplicable.

The searches here were not reasonable under any accepted interpretation of the Fourth Amendment. The motion to suppress the evidence should have been granted, and without that evidence, the judgment of conviction was not authorized. Therefore, we need not reach the enumerations of error dealing with the trial itself.

*Judgment reversed. Bell, C. J., Quillian, P. J., Webb and Shulman, JJ., concur. Deen, P. J., McMurray and Birdsong, JJ., dissent. Banke, J., disqualified.*

ARGUED SEPTEMBER 21, 1977 — DECIDED JANUARY 11, 1978 — REHEARING DENIED FEBRUARY 8, 1978 —

*Grogan, Jones, Layfield & Swearingen, Ben B. Phillips,* for appellant.

*Robert E. Keller, District Attorney, James W. Bradley, Clifford A. Sticher, Assistant District Attorneys,* for appellee.

McMURRAY, Judge, dissenting.

The majority hold that probable cause and exigent circumstances have not been shown by the state so as to bring the search of the automobile within the Carroll doctrine or "automobile exception." See Carroll v. United States, 267 U. S. 132 (45 SC 280, 69 LE 543), and also Chambers v. Maroney, 399 U. S. 42 (90 SC 1975, 26 LE2d 419). The majority also hold that because the suspects were arrested in the hall and not inside the motel the evidence seized during the search of the motel room must be suppressed. For the following reasons I disagree with the conclusions reached by the majority. I would hold that the search of the automobile in this case comes within the Carroll doctrine and the search of the motel room was a lawful search incident to the arrest.

Matthews received his information from a reliable informant whose reliability had been proven very reliable and trustworthy on numerous occasions over the preceding seven years. Matthews relayed to Angel the information he had received from his informant, but

whether he stated to Angel the fact of or the reasons for his belief in the reliability of the informant is not shown by the record. The majority hold that due to the absence of evidence that Angel was given information from which to determine the reliability of the informant, it has not been shown that Angel had probable cause to instigate the search and seizure. This holding unsupported by any citation of authority overlooks the decisions of the court in *Register v. State,* 124 Ga. App. 136, 138 (183 SE2d 68); *Meneghan v. State,* 132 Ga. App. 380, 383 (2c) (208 SE2d 150); and *Baxter v. State,* 134 Ga. App. 286, 288 (1) (214 SE2d 578). In these cases information received by one law enforcement officer has been relayed to other officers who have acted upon the information. Compare *Buck v. State,* 127 Ga. App. 72, 74 (192 SE2d 432). Law enforcement officers are authorized to rely upon the observations of fellow officers engaged in a common investigation.

The majority also hold that because there was time to get a search warrant after probable cause existed there were no exigent circumstances. In reaching their conclusion the majority point out a statement made by the trial judge. The statement of the trial court's understanding of the law, which the majority here is rejecting, is closely paralleled by the following language of the Supreme Court in Cardwell v. Lewis, 417 U. S. 583, 595 (3) (94 SC 2464, 41 LE2d 325): "Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. Cf. Chambers, id. at 50-51. . . The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action." See also Chambers v. Maroney, supra, at pp. 50-51.

Here, when the law enforcement officers realized that the suspects did not include McQuirk as they had anticipated the direction of their investigation was

radically altered. It was at that time that the exigent circumstances arose as the goal of the police action changed from apprehension of the fugitive McQuirk to utilization of the information they had received regarding stolen drugs located in the automobile. The need for prompt police action arose from this change of circumstance as the suspects had been alerted to police intentions and could have thus been motivated to dispose of the stolen goods.

Coolidge v. New Hampshire, 403 U. S. 443 (91 SC 2022, 29 LE2d 564), cited by the majority is inapposite. In that case the suspect had already had ample opportunity to destroy any evidence in the automobile, and there was no suggestion that the automobile was being used for an illegal purpose or contained stolen goods, contraband or dangerous instrumentalities.

Finally, in regard to the search of the room, in my opinion it was performed incident to a lawful arrest. The majority apparently do not consider the testimony of Angel at the trial that the suspects at the time of arrest were leaving the room but that the defendant here was physically inside the room when arrested. This court in considering the trial court's ruling on the motion to suppress must consider the evidence at trial as well as the hearing on the motion. *Sanders v. State,* 235 Ga. 425, 431 (2) (219 SE2d 768).

The officers were authorized to search the area in the immediate presence of the suspects for their own protection and to discover any evidence which might be destroyed. See United States v. Rabinowitz, 339 U. S. 56 (70 SC 430, 94 LE 653).

For the foregoing reasons I respectfully dissent.

I am authorized to state that Presiding Judge Deen and Judge Birdsong join in this dissent.