## 38458. PARKER v. THE STATE.

PER CURIAM.
After plenary consideration of this matter, it is found not to satisfy the criteria for the grant of certiorari and the writ is therefore vacated.

*All the Justices concur, except Hill, P. J., and Smith, J., who dissent.*

DECIDED JULY 9, 1982.

*Phillip L. Hartley,* for appellant.
*Jeff C. Wayne, District Attorney,* for appellee.

SMITH, Justice, dissenting.
This court granted certiorari in this case to determine whether the Court of Appeals erred in overruling *Love v. State,* 144 Ga. App. 728 (242 SE2d 278) (1978). To the recommendation that this court vacate its grant of certiorari and thereby affirm the overruling of *Love v. State,* I dissent.

Allowing the decision of the Court of Appeals in this case to stand introduces a new and dangerous concept to the role of appellate courts. In my opinion, it is clear that the court below overstepped its bounds when it overruled the *Love* case. The facts of *Love,* as well as the controlling legal principles, are entirely inapposite to the present case. A comparison of the two cases demonstrates the crucial differences between *Parker* and *Love,* and shows why the Court of Appeals erred when it overruled *Love.*

The facts of *Parker* are straightforward. An informant phoned the Hall County Sheriff's Department and told Officer Ash that within the past two hours, he had personally seen marijuana in a light tan Toyota. The informant said that the automobile with license tag number 606 was in "the vicinity of Broad Street and Gulf Station and Ralph Strickland's Funeral Home," carrying a white male and female.

Ash immediately radioed Officers Bishop and Campbell, de-

scribing the vehicle, its occupants, the location, and that the vehicle contained marijuana. The officers moved to set up a surveillance. Arriving at the scene, they spotted a white female at the Gulf Station using a telephone near a vehicle fitting the description of the Toyota. The female, accompanied by a white male, entered the vehicle and drove off. The officers followed the car until it stopped and the male got out. Then Bishop turned on his blue light and pulled her over. Ms. Parker got out of the car to ask why she was being stopped. Bishop said that when "a backup gets here then I'll talk to you about it." After several other officers arrived on the scene, Bishop asked if he could look in her vehicle. He refused to let Parker call her father, indicating that he would search the vehicle anyway, which he did. Officers Campbell and Ash were present during the conversation and subsequent search. Bishop found a small quantity of marijuana in a paper sack lying in the rear floorboard of Ms. Parker's automobile.[1]

At trial, Parker moved to suppress the evidence seized during Bishop's search. The Superior Court denied the motion, and on appeal the Court of Appeals affirmed. *Parker v. State,* 161 Ga. App. 37 (288 SE2d 852) (1982). That court held that the product of Officer Bishop's warrantless search was permissible under the "automobile exception" to the warrant requirement set forth in Carroll v. United States, 267 U. S. 132 (45 SC 280, 69 LE 543) (1925), since there existed probable cause to believe that Ms. Parker's car contained contraband, and there were exigent circumstances which made it impractical to get a search warrant. I have no quarrel with this conclusion. Under the facts of this case Officer Bishop, the seizing officer, had "reasonable cause . . . for belief that the contents of the automobile offend against the law." Carroll v. United States, supra at 158. See *Cunningham v. State,* 133 Ga. App. 305 (211 SE2d 150) (1974).

When coupled with corroboration by the personal observation of a police officer, a reliable informant's tip is sufficient to establish probable cause for a warrantless arrest. See Draper v. United States, 358 U. S. 307 (79 SC 329, 3 LE2d 327) (1959). Bishop's search was based upon information given him by Officer Ash. Here the informant's report to Officer Ash as to the make, color of car, tag number, location, and number of people in the car was corroborated

---

[1] With the facts as they are in *Parker* Division 4 of the Court of Appeals' opinion in that case is unnecessary. The rule of law set out in Division 4 of *Parker* has been the law in Georgia since 1974. See *McNeal v. State,* 133 Ga. App. 225 (211 SE2d 173) (1974).

by the officers and such has been held sufficient to establish probable cause. In *Parker,* the informant's direct observation of marijuana in the car removed his information from the realm of hearsay.[2] Furthermore, when Ash radioed Bishop and told him there was marijuana in the car, Bishop was authorized to make the search because a fellow police officer had informed him that a crime had been committed. This information was in itself sufficient to authorize a stop and search of the Parker car and a subsequent arrest. The test for informant credibility under Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964), is not applicable as between police officers, as it applies only to professional or criminal informants, not to government agents, citizen bystanders, or victims of crime. Law enforcement officers are presumed to be reliable. Whiteley v. Warden, 401 U. S. 560 (91 SC 1031, 28 LE2d 306) (1971); *McNeal v. State,* 133 Ga. App. 225 (211 SE2d 173) (1974). See also United States v. Beusch, 596 F2d 871 (9th Cir. 1979), United States v. Schoor, 597 F2d 1303 (9th Cir. 1979). This search met the requirements of the Fourth Amendment.

I cannot agree with the Court of Appeals, however, that these facts implicate the rule announced in *Love v. State,* supra. The court there held that the constitutional test for determining probable cause when seeking a warrant from a magistrate applies with equal force to a warrantless search. "Accordingly, upon judicial review of whether probable cause existed at the time of the search, 'the standards applicable to the factual basis supporting the officer's prob-able-cause assessment at the time of the challenged ... search are at least as stringent as the standards applied with respect to the magistrate's assessment.' " [Cit.] 144 Ga. App., supra, at 734. See *Morgan v. Kiff,* 230 Ga. 277, 280 (196 SE2d 445) (1973); Whitebread, Criminal Procedure 70 (1980). The facts of that case are distinguishable from those of the case at bar, however, and the court below was wrong to overrule it.

The Court of Appeals stated in its opinion that *Love* held "that the searching officer must *personally* be in possession of sufficient facts enabling him to make an *independent* determination of probable cause . . ." 161 Ga. App., supra, at 38. To arrive at this conclusion, the Court obviously took a portion of Division One out of context. (Emphasis supplied.)

The facts of *Love* are as follows. Angel, supervisor of the GBI

---

[2] "An informant who alleges he is an 'eyewitness' to an actual crime perpetrated demonstrates sufficient reliability of the person." Cundiff v. United States, 501 F2d 188, 190 (8th Cir. 1974); United States v. Swihart, 554 F2d 264, 268 (6th Cir. 1977).

Fugitive Squad, received information from an informant that one Sammy McQuirk, along with two others, was in the Atlanta area trying to sell a large quantity of drugs. Angel had arrested McQuirk two years earlier and remembered his physical appearance.

Investigator Matthews of Fulton County received information over a several day period from a different informant that there were two men in town looking for a buyer of drugs. He was told on September 12, 1976, that the men were traveling in a silver Lincoln Continental Mark IV and were staying in Room 222 of Century Center Hotel in Clayton County, Georgia. The informant thought one of the men was a fugitive because he always wore dark glasses.

Neither Angel's nor Matthews' informant ever saw Love, or anyone else, with drugs. In fact, Angel's informant never saw anyone; his information was totally hearsay. When Matthews conveyed his information to Angel he immediately concluded that both informants were talking about McQuirk. Upon receiving word from Matthews that a person fitting McQuirk's description and a companion were to spend the night at Century Center Hotel, Angel arranged to stake out the room and arrest McQuirk as a fugitive from justice. Angel had no warrant of any kind. Angel and his group located the Lincoln in the motel parking lot. Thus it may be seen that Angel knew everything that Matthews knew except whether Matthews' informant was reliable. Where *the officer receiving the tip* cannot establish the credibility of the informant, probable cause cannot be established. *Radowick v. State,* 145 Ga. App. 231 (244 SE2d 346) (1978). Matthews testified under oath "that he *thought* his informant to be reliable" (emphasis supplied), 144 Ga. App. 736, but this, standing alone, was held insufficient to establish probable cause.

Love and his companion came out of room 222 as Angel and two officers were passing by. The officers arrested them, pushed them back into their room, searched them and found nothing. At this point, Angel found out both informants were wrong as Love was Love not McQuirk. Given these facts, it is understandable that Matthews made the statement under oath that he *thought* his informant was reliable. Based upon the above facts, the court in *Love* held that Angel did not have probable cause to arrest Love and search the room. The opinion simply stated "that Angel had [no] facts from which to determine the informant's reliability, [and] it was error for the trial court to conclude at the suppression hearing that he had probable cause to search the vehicle." 144 Ga. App. at 736. Actually, Officer Angel had no reason to proceed past the arrest because he arrested Love for the sole reason that he believed he was McQuirk, a fugitive from justice. When Angel discovered he had arrested the wrong man, all later actions were illegal due to the illegal arrest. In

any event, Matthews, by his own sworn testimony, had no information from a reliable informant to give Angel. All Matthews needed to do to validate the search was to testify positively at trial as to his informant's reliability. He failed to do so. Thus all the information collectively known by all investigative officers in the *Love* case did not add up to probable cause.

I do not think anyone would argue for one minute that the combined information produced at trial by Matthews and Angel was sufficient probable cause to authorize a magistrate to issue a search warrant. This is evident from the fact that Matthews stated under oath that "he *thought* his informant to be reliable." (Emphasis supplied.) Contrary to the opinion of the Court of Appeals, the *Love* case simply says there was not enough evidence produced at trial to authorize an arrest, search and seizure by Angel.

The recent case of United States v. Ross, 50 USLW 4580 (June 1, 1982), does not alter my analysis. The facts of Ross were stated by the Court as follows: "In the evening of November 27, 1978, an informant who had previously proved to be reliable telephoned Detective Marcum of the District of Columbia Police Department and told him that an individual known as "Bandit" was selling narcotics kept in the trunk of a car parked at 439 Ridge Street. The informant stated that he had just observed "Bandit" complete a sale and that "Bandit" had told him that additional narcotics were in the trunk. The informant gave Marcum a detailed description of "Bandit" and stated that the car was a "purplish maroon" Chevrolet Malibu with District of Columbia license plates.

"Accompanied by Detective Cassidy and Sergeant Gonzales, Marcum immediately drove to the area and found a maroon Malibu parked in front of 439 Ridge Street. A license check disclosed that the car was registered to Albert Ross; a computer check on Ross revealed that he fit the informant's description and used the alias "Bandit." In two passes through the neighborhood the officers did not observe anyone matching the informant's description. To avoid alerting persons on the street, they left the area.

"The officers returned five minutes later and observed the maroon Malibu turning off Ridge Street onto Fourth Street. They pulled alongside the Malibu, noticed that the driver matched the informant's description, and stopped the car. Marcum and Cassidy told the driver — later identified as Albert Ross, the respondent in this action — to get out of the vehicle. While they searched Ross, Sergeant Gonzales discovered a bullet on the car's front seat. He searched the interior of the car and found a pistol in the glove compartment. Ross then was arrested and handcuffed. Detective Cassidy took Ross' keys and opened the trunk, where he found a

closed brown paper bag. He opened the bag and discovered a number of glassine bags containing a white powder. Cassidy replaced the bag, closed the trunk, and drove the car to Headquarters.

"At the police station Cassidy thoroughly searched the car. In addition to the 'lunch-type' brown paper bag, Cassidy found in the trunk a zippered red leather pouch. He unzipped the pouch and discovered $3,200 in cash. The police laboratory later determined that the powder in the paper bag was heroin. No warrant was obtained." Id. at 4581.

The court held that the officers had probable cause to stop, search and arrest Ross. The factual similarities of Ross and this case are striking. Each case involved an eyewitness informant and "self-verification" of parts of the informant's tip. In addition, in each case the officer who originally received the tip was present when the search and arrest were made.

On the other hand, neither *Parker* nor United States v. Ross resemble *Love* in any fact or circumstance. *Love* involved two separate tips from two different informants. Neither informant was an eyewitness to the commission of a crime; moreover, none of the "self-verification" elements which are so important in the present case were applicable in *Love*. All of the information which led to Love's arrest was simply hearsay which was not supported by the corroborative factors so important to this case. Nor did the officer the informant notified (Matthews) unequivocally state that he (the informant) was reliable.

For these reasons, I would reverse the Court of Appeals insofar as its decision overrules *Love v. State.*

I am authorized to state that Presiding Justice Hill joins in this dissent.