**Gen. 51]** 51

**COMMISSION ON INDIAN AFFAIRS**

RECOGNITION OF MARYLAND INDIAN STATUS –
REVISED PETITION FOR RECOGNITION MAY BE
CONSIDERED BY THE COMMISSION

August 8, 2011

*E. Keith Colston*
*Administrator*
*Maryland Commission on Indian Affairs*

On behalf of the Maryland Commission on Indian Affairs ("Commission"), you asked for our opinion about reconsideration of a petition for recognition of a group's "Maryland Indian status" under State law. The petition was originally filed in 1995, received a favorable recommendation from the Commission, but was ultimately denied by the Governor in 2003. The denial expressly left open the possibility that the group could resubmit its petition with additional information. You ask whether that petition may now be resubmitted to the Governor, with or without a further recommendation by the Commission.

For the reasons explained below, it is our opinion that the Commission should not simply resubmit the 1995 petition to the Governor, as the relevant statute contemplates that the Commission and Governor will have reasonably current sociological information concerning the applicant group. However, if the petitioning group wishes to pursue recognition of Maryland Indian status, a revised petition including current information should be submitted to the Commission for its consideration. Based on that information, the Commission may reiterate or revise its recommendation to the Governor.

**I**

**Background**

*A.* *Recognition of Maryland Indian Status*

**1.** **Recognition Process**

State law establishes a process by which the Governor may formally recognize, by executive order, the "Maryland Indian status"

of a Native American community indigenous to the State. Annotated Code of Maryland, State Government Article ("SG"), §§ 9.5-309 through 9.5-312. The recognition process does not purport to adjudicate Native American status generally, but rather simply identifies communities that have existed in Maryland since the founding of the United States.[1] Moreover, the law provides that it does not create a benefit or entitlement of any kind; nor does it impair existing rights, benefits or entitlements of Native Americans living in the State. SG §9.5-309(d).[2] Nor does any act or omission of the Commission create a private cause of action. SG §9.5-309(c)(3).

Pursuant to the statute, the Commission has adopted regulations that govern the recognition process. SG §§9.5-309(a), 9.5-311; COMAR 01.06.01.[3] Under the regulations, a tribe, band, group, or clan indigenous to the State that wishes to receive State recognition must submit to the Commission a petition containing specified information and documentation. COMAR 01.06.01.05. The Commission publishes notice of receipt of the petition, and provides an opportunity for the public to submit comments in support of or in opposition to the petition. COMAR 01.06.01.07. The Commission then refers the petition and all comments timely received to a Recognition Advisory Committee[4] for review and

---

[1] For example, many well known Native American groups of the western United States would not qualify for "Maryland Indian status."

[2] The statute requires that, as a condition of formal recognition of Maryland Indian status, members of the petitioning group file an affidavit renouncing all tribal rights to ownership of land in Maryland. SG §9.5-310. However, such an affidavit is likely without legal effect. *See* Letter of Attorney General J. Joseph Curran, Jr. to Governor William Donald Schaefer, concerning House Bill 126 and Senate Bill 421 (May 23, 1988).

[3] The regulations were first adopted in 1992. 19:9 Md. Reg. 878. Although they have been recodified several times over the past two decades, their basic requirements and process have remained the same.

[4] Pursuant to the regulations, a Recognition Advisory Committee consists of five persons appointed by the Commission to review a petition. COMAR 01.06.01.11. The Committee is to have at least two Native American members, none of whom may be members of the petitioning group, as well as experts in genealogy, anthropology, and related fields. *Id.*

recommendation for Commission action, based on criteria set out in the statute and the regulations. COMAR 01.06.01.08D through 01.06.01.08J; COMAR 01.06.01.04; COMAR 01.06.01.05B. The Commission reviews the Recognition Advisory Committee's recommendation and, if the Commission determines that the petition adequately demonstrates that the group satisfies the criteria in the regulations, recommends to the Governor that the petitioning group be formally recognized as a Maryland Indian tribe, band, group, or clan. COMAR 01.06.01.08K through COMAR 01.06.01.08M. (Any Commission members who belong to the petitioning group are barred from participation in the Commission's deliberations. SG §9.5-309(b)(2)).

If the Governor concurs in the Commission's recommendation, the Governor issues an executive order that recognizes formally the Maryland Indian status of the petitioning group. The executive order is submitted to the General Assembly's Joint Committee on Administrative, Executive, and Legislative Review and takes effect 30 days after submission. SG §9.5-309(c); COMAR 01.06.01.10A and C. If the Governor does not concur with a recommendation of the Commission, the Governor notifies the Commission of the reasons and the Commission must promptly notify the petitioning group and all persons requesting notice. COMAR 01.06.01.10B.

Neither the statute nor the regulations address reconsideration of a petition by the Governor or whether a petitioning group is precluded from filing a new petition after a petition has been rejected.

### 2. Petition Requirements

The regulations set forth the information and documentation that make up a petition for State recognition. "[T]aking into account the special circumstances of Native Americans indigenous to Maryland," a petition must establish that:

A. The group has been:

(1) Identified as Native American from before 1790 until the present, and

(2) Part of a continuous Native American community from before 1790 until the present;

B. The members of the group are descendants from a tribe that:
(1) Existed before 1790,

(2) Is indigenous to Maryland, and

(3) Inhabited a specific area in Maryland before 1790; and

C. The membership of the group is composed principally of persons who are not members of any other acknowledged or recognized Native American tribe, band, group, or clan.

COMAR 01.06.01.04. To document that the petitioning group satisfies these criteria, the petitioning group is to submit:

(a) Documents showing, from before 1790 until the present:
(i) Longstanding relationships of the group with the government of Maryland or the United States, based on identification of the group or the group's members as Native American indigenous to Maryland;

(ii) Repeated dealings of the group with a county or other local government in a relationship, based on identification of the group or the group's members as Native American indigenous to Maryland;

(iii) Repeated dealings of the group with other tribes, bands, groups, or clans, or national Native American organizations, based on identification of the group as Native American indigenous to Maryland;

(iv) Identification of the group as Native American indigenous to Maryland by anthropologists, historians, genealogists, or other scholars; or

(v) Repeated identification of the group or the group's members as Native American indigenous to Maryland in official government records, church or school records, medical records, bibles and other family records, newspapers, books, photographs, or oral histories;

(b) Documents identifying the name of the group, or other term recognizing the group as Native American indigenous to Maryland, with an approximate location in Maryland from before 1790 until the present;

(c) A list of membership criteria established by the group;

(d) A statement of the procedures adopted by the group for applying the group's membership criteria; and

(e) A list of all individuals included on the group's current and previous membership rolls or known by the group to be eligible for membership, and the county in which each resides;...

COMAR 01.06.01.05B(1). The petitioners may also submit other evidence, including affidavits from tribal elders or leaders recognizing individuals as members of the group. COMAR 01.06.01.05B(2). A petition for formal recognition also must include:

(1) The name and mailing address of the petitioning group and of the individual authorized to act as the petitioning group's agent for petition purposes;

(2) A statement that the petitioning group is a Native American tribe, band, group, or clan indigenous to Maryland;

(3) A statement that the petitioning group has verified with its members that the majority of them are not members of any other tribe, band, group, or clan acknowledged or recognized as American Indian by the Secretary of the Interior or any state; [and]

(4) A copy of the petitioning group's rules governing the conduct of the petitioning group's affairs.

COMAR 01.06.01.05A.

### B. *Piscataway Conoy Tribe Recognition Petition*

#### 1. 1995 - Submission of Petition

In 1995, a group organized as the Piscataway Conoy Tribe ("PCT") submitted to the Commission a petition for State recognition of its Maryland Indian status (the "PCT Petition"). The PCT Petition was referred to a Recognition Advisory Committee. At the conclusion of the process, on August 26, 1996, the Commission determined that the PCT Petition satisfied the criteria set forth in the Commission's regulations and recommended that the Governor grant the PCT Petition. However, the petition, and the Commission's determination, were not immediately forwarded to the Governor.[5]

#### 2. 2003 - Denial of Petition

On September 24, 2003, then Governor Ehrlich rejected the petition. In his denial letter, the Governor indicated that he did not believe that the petitioning group had adequately documented that the PCT have been identified as a continuous Native American community, from before 1790 to the time of the petition, indigenous to a specific area in the State. In particular, he found that the documentation did not provide clear and direct proof of lineage prior

---

[5] At the time that the petition was originally submitted, the Commission's recommendation was subject to review by the Secretary of Housing and Community Development. That additional layer of review, which has since been eliminated from the process, delayed the transmission of the Commission's recommendation to the Governor while the Commission endeavored to answer questions framed by the Secretary.

to 1850 and stated that additional research was necessary. He summarized the key questions as follows:

> 1. Has the PCT established that it or its members have been identified since before 1790 as descended by blood line from members of a tribe, band, or clan which is identified as Native American or Indian in the historical record? Has the PCT since before 1790 been part of a continuous group indigenous to Maryland with common cultural ties and interests which differentiate its members from others?

> 2. Has the PCT established that its members have descended by blood line since before 1790 from the historic Piscataway tribe, bonds, or clans in southern Maryland?

He noted that the federal Bureau of Indian Affairs had raised similar questions when it evaluated the group's petition for federal recognition as an Indian tribe.[6]

The Governor concluded that, in the absence of additional research, "the State would need to reach unjustified conclusions in order to determine that the PCT today is a Native American group indigenous to Maryland and has existed continuously since before 1790." Accordingly, the Governor denied the petition, but advised that the group could file a revised petition for review by the Commission and ultimately by the Governor. We understand that, consistent with the Commission's regulations, much of the PCT petition documentation was returned to the petitioning group after the PCT petition was denied. *See* COMAR 01.06.01.06D.

---

[6] The group is not currently recognized by the federal government as an American Indian entity. *See* 75 CFR 60810 (October 1, 2010). It remains listed among the groups petitioning for such status as of April 29, 2 0 1 1 . *S e e* http://www.bia.gov/idc/groups/xofa/documents/text/idc013623.pdf

### 3.     Request for Reconsideration of PCT Petition

We understand that the petitioning group has recently requested a reconsideration of the petition that it submitted in 1995. However, it has not submitted the documentation that was returned to it.  Nor has it yet submitted a revised petition that addresses the issues raised in the Governor's 2003 letter.  Rather, it has argued that the 1995 petition satisfied the criteria for recognition.

## II

## Analysis

You are seeking direction on how to obtain reconsideration of the effort to accord Maryland Indian status to the PCT.[7]  You have asked whether the Commission may resubmit to the Governor the 1995 petition that was denied in 2003, with or without a recommendation from the Commission.  Nothing in the statute or regulations expressly addresses whether a group may resubmit a petition that has been denied or whether the Commission and Governor may consider a new or revised petition from a group that has previously submitted a petition.  In the absence of any prohibition in the statute, it is our view that the Commission and Governor may do so.  This is particularly true where a petition may be denied because it is inadequately documented rather than from lack of underlying merit.

One option – as invited by the 2003 denial letter – was for the petitioning group simply to submit to the Governor additional information concerning the existence of the group in Maryland as of 1790.  However, in our view, subsequent events and the passage of time have eliminated that option.  Some of the original documentation supporting the petition is apparently no longer in the possession of the State.  Moreover, it has been eight years since the denial of the petition and nearly a generation since the documentation supporting the petition was originally assembled.

---

[7] The fact that a new Governor has been elected since the 2003 qualified denial of the petition does not affect the legal analysis, as "[e]xecutive power is one of continuing effect, never ending, and unbroken by succession, a principle inherent in and necessary to government."  *Baxter v. State*, 214 S.E.2d 578, 582 (Ga. App. 1975).

There have no doubt been significant changes in the population encompassed by the petition.

The statute and regulation indicate that the recognition decision is to be based on findings concerning the current status of the petitioning group, as well as its history. *See, e.g.,* COMAR 01.06.01.04A(2) (group must be part of a continuous community "until the present"); .04C (group must be composed principally of members who are not part of another recognized tribe at time of submission of petition); .05B(1)(a) (petition information to demonstrate various facts concerning the group existing "until the present"); .05B(1)(b) (documentation to show approximate location of group in Maryland "until the present"); *see also* SG §9.5-311(b)(3) (Commission's petition standards to require information "from historical times until the present"). The regulations also require that the petition be accompanied by a list of current membership criteria established by the group; a statement of the current procedures adopted by the group for applying the group's membership criteria; and a list of all individuals included on the group's current and previous membership rolls or known by the group to be eligible for membership, and the county in which each resides. COMAR 01.06.01.05B(1)(c), (d), and (e).

The regulations require that the process proceed expeditiously in a way that the information does not grow stale. *See* COMAR 01.06.01.08B (Commission to send notices within 30 days of filing of petition); .08C (deadline for group to supplement incomplete petition); .08D (completed petition to be referred to Recognition Advisory Group "within 15 days"); .08E-H (deadlines for submission of additional information and review by Recognition Advisory Group); .08K-M (deadline for Commission recommendation); .09 (deadlines for Commission reconsideration of recommendation). While the Commission has retained authority to waive or extend these various deadlines, COMAR 01.06.01.13, their evident purpose is to ensure that the information presented to the Governor is reasonably current, as well as historical in nature.

The 1995 petition presumably included documentation and information that were current as of the date submitted. There can be little doubt that, in the intervening 16 years, some of the information and documentation that accompanied the original petition, even if it can now be located, is stale and would fail to satisfy the standards in regulations for submission to the Governor. In our view, a revised petition should include not only any additional historical information

concerning the group's presence in Maryland prior to 1850, but also updated information concerning the current status and composition of the petitioning group. Presumably, this could be done expeditiously as the group already assembled, as part of its 1995 submission, information concerning most of the historical period from 1790 to the present.

## III

## Conclusion

In our opinion, the Commission, and the Governor, may consider a new, or revised petition that seeks recognition of Maryland Indian status for a group. However, information and documentation considered by the Commission, and Governor, must satisfy the requirements in the statute and regulations for current information concerning the petitioning group. Accordingly, if the petitioning group wishes to pursue recognition of Maryland Indian status for the PCT, a revised petition including current information should be submitted to the Commission for its consideration. Based on that information, the Commission may reiterate or revise its recommendation to the Governor.

Douglas F. Gansler
*Attorney General*

Philip J. Deters
*Assistant Attorney General*

Robert N. McDonald
*Chief Counsel*
  *Opinions and Advice*

J. JOSEPH CURRAN. JR.
ATTORNEY GENERAL

JUDSON P. GARRETT. JR.
CHARLES O. MONK. II
DENNIS M. SWEENEY
DEPUTY ATTORNEYS GENERAL

ROBERT A. ZARNOCH
ASSISTANT ATTORNEY GENERAL
COUNSEL TO THE GENERAL ASSEMBLY

RICHARD E. ISRAEL
KATHRYN M. ROWE
ASSISTANT ATTORNEYS GENERAL



# THE ATTORNEY GENERAL
# OF MARYLAND

OFFICE OF
COUNSEL TO THE GENERAL ASSEMBLY
104 LEGISLATIVE SERVICES BUILDING
90 STATE CIRCLE
ANNAPOLIS, MARYLAND 21401-1991
AREA CODE 301
BALTIMORE & LOCAL CALLING AREA 841-3889
WASHINGTON METROPOLITAN AREA 858-3889
TTY FOR DEAF - ANNAPOLIS 841-3814 - D.C. METRO 858-3814

May 23, 1988

The Honorable William Donald Schaefer
Governor of Maryland
State House
Annapolis, Maryland 21401

Re: House Bill 126 and
Senate Bill 421

Dear Governor Schaefer:

We have reviewed and hereby approve for constitutionality and legal sufficiency House Bill 126 and Senate Bill 421, identical bills concerning recognition of Maryland's American Indians. While most provisions of the legislation raise no legal problem and the bill may be signed into law, we have concluded that an affidavit required by one portion of the bill will have no force or effect.

House Bill 126 and Senate Bill 421 authorize the State Commission on Indian Affairs to establish a process under which groups of American Indians may petition for State recognition. Once recognized, the groups would qualify for certain types of federal assistance. As introduced, the bill provided that:

> "The provisions of this section are not intended to create any rights of ownership or other rights to land or to create any benefits or entitlements of any kind, nor are they intended to impair valid existing rights, benefits, or entitlements belonging to American Indians residing in the State."

In response to concerns expressed by some that this provision would be insufficient to prevent the bill from affecting title to land, the bill was amended to further provide that:

> "Prior to formal recognition of Maryland Indian status, members of the petitioning group shall submit an affidavit renouncing all tribal rights of ownership with respect to lands in the State."

It is our view that any affidavit submitted pursuant to this subsection would be of no force or effect. 1/

The federal Nonintercourse Act, 25 U.S.C. s 177 provides that:

> "No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution." 2/

This provision codifies the principle that a sovereign act is required to extinguish aboriginal title and any conveyance without the sovereign's consent is void ab initio. Oneida County, N.Y. v. Oneida Indian, Etc., 470 U.S. 226, 245 (1985). This principle stems from the doctrine of discovery, which holds that discovery gave title to the government by whose subjects, or by whose authority, it was made, against all other European governments, which title might be consummated by possession. The status of the Indians under this system was explained in Johnson v. McIntosh, 21 U.S. (8 Wheat) 543, 574 (1823):

> "In the establishment of these relations, the rights of the original inhabitants were, in no instance, entirely disregarded; but were necessarily, to a considerable extent, impaired. They were admitted to be the rightful occupants of the soil, with a legal as well as just claim to retain possession of it, and to use it according to their own discretion; but their rights to complete sovereignty, as independent nations, were necessarily diminished, and their power to dispose of the soil at their own will, to whomsoever they pleased, was denied by the original fundamental principle that discovery gave exclusive title to those who made it."

With the adoption of the Constitution, title passed to the United States government. Therefore, the right to extinguish Indian

---

1 This would appear to be completely academic, as the Department of Housing and Community Development has researched this issue and found that it is highly unlikely that an Indian group in Maryland could successfully assert a land claim.

2 The Act further provides for a $1,000 fine for a person who attempts to negotiate such a treaty or convention without the authority of the United States. It is not clear whether this provision would apply to the request for affidavits. However, in light of the ineffectiveness of the affidavits, we would recommend that the provision not be enforced. We would further advise that any regulations promulgated by the Commission not contain a provision requiring an affidavit.

title is an attribute of sovereignty which no state, but only the United States, can exercise. Oneida Indian Nation of N.Y. State v. County of Oneida, N.Y., 414 U.S. 661 (1974).

In conclusion, the required affidavit would be invalid because it would act to extinguish the group's tribal rights of ownership in land by means other than a treaty or convention entered into pursuant to the Constitution. Any regulations promulgated to implement House Bill 126/Senate Bill 421 should not contain this affidavit requirement.

Very truly yours,

J. Joseph Curran, Jr.
Attorney General

JJC:KMR:mar

cc: Alan Rifkin, Esquire
    F. Carvel Payne
    Hon. Winfield M. Kelly, Jr.
    Hon. Francis X. Kelly
    Hon. Richard F. Colburn